**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **ROSEBUD SIOUX TRIBE,** a federally recognized Indian Tribe**,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 05-1023L** |
| **v.** | ) | |
| | ) | **Judge James F. Merow** |
| **THE UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

## TABLE OF CONTENTS

DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND MEMORANDUM IN SUPPORT THEREOF . . . . 1

MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS . . . . 1

I. INTRODUCTION . . . . 1

II. FACTUAL BACKGROUND . . . . 2

III. ARGUMENT . . . . 5

A. Standard of Review . . . . 5

B. Plaintiff's Claims Regarding the Initial Lease Approval and Rescission are Barred by the Statute of Limitations . . . . 7

C. Plaintiff's Claims are Barred by the Equitable Doctrine of Laches . . . . 10

D. Plaintiff's Lawsuit Should Be Dismissed for Lack of Jurisdiction Because It Constitutes an Impermissible Attempt to Collaterally Attack a Final and Decreed Consent Judgment . . . . 13

E. Plaintiff Has Failed to Identify a Breach of a Statutory or Regulatory Provision that Can Be Fairly Interpreted to Mandate Compensation . . . . 18

IV. CONCLUSION . . . . 29

## TABLE OF AUTHORITIES

### FEDERAL CASES


Alanzo v. Chase Manhattan Bank, N.A.,
25 F. Supp. 2d 455 (S.D.N.Y. 1998) . . . . . 5

Aldabe v. Aldabe,
616 F.2d 1089 (9th Cir. 1980) . . . . . 6

Alder Terrace, Inc. v. United States,
161 F.3d 1372 (Fed. Cir. 1998) . . . . . 5

Andrade v. United States,
202 Ct. Cl. 988, 991, 996, 485 F.2d 660, 661, 664 (Ct. Cl. 1973), cert. denied, 419 U.S. 831 (1974) . . . . . 9

Apache Survival Coalition v. United States,
21 F.3d 895 (9th Cir. 1994) . . . . . 11, 12

Armstrong v. Executive Office of the President,
1 F.3d 1274 (D.C. Cir. 1993) . . . . . 17

Army & Air Force Exchange Serv. v. Sheehan,
456 U.S. 728 (1982) . . . . . 20, 21

Association of Community Organizations for Reform Now v. Edgar,
99 F.3d 261 (7th Cir.1996) . . . . . 18

Bannum, Inc. v. United States,
60 Fed. Cl. 718 (2004) . . . . . 11

Beckett v. Air Line Pilots Ass'n,
995 F.2d 280 (D.C. Cir. 1993) . . . . . 17

Beckham v. Grand Affair of N.C., Inc.,
671 F. Supp. 415 (W.D.N.C. 1987) . . . . . 6

Bond v. United States,
47 Fed. Cl. 641 (2000) . . . . . 6

Bowen v. Massachusetts,
487 U.S. 879 (1988) . . . . . 21

Briscoe v. LaHue,
663 F. 2d 713 (7th Cir. 1981), aff'd, 460 U.S. 325 (1983) . . . . . 9

Brown v. Neeb,
644 F.2d 551(6th Cir. 1981) . . . . . 17

Brown v. United States,
195 F.3d 1334 (Fed. Cir. 2000) . . . . . 9

Brown v. United States,
86 F.3d 1554 (Fed. Cir. 1996) . . . . . 22, 23, 24

Capoeman v. United States,
440 F.2d 1002, 194 Ct. Cl. 664 (1971) . . . . . 9

Catellus Dev. Corp. v. United States,
31 Fed. Cl. 399 (1994) . . . . . 8

Citizens & Landowners Against the Miles City/New Underwood Powerline v. Secretary U.S.

Department of Energy,
683 F. 2d 1171 (8th Cir. 1982), 513 F.Supp. 264 (D.C.S.D. 1981) . . . . . . . . . . . . . . . . . 12
Cochran v. United States,
19 Cl. Ct. 455 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,
527 U.S. 666 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
Concerned Rosebud Area Citizens v. Babbitt,
34 F. Supp. 2d 775 (D.D.C. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Costello v. United States,
365 U.S. 265 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
Dalsis v. Hills,
424 F. Supp. 784, 788 (W.D.N.Y. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
Duran v. Carruthers,
885 F.2d 1485 (10th Cir. 1989), cert. denied, 110 S. Ct. 865 (1990) . . . . . . . . . . . . . . . . 17
Eastern Transp. v. United States,
272 U.S. 675 (1927) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
England v. Contel Advanced Systems,
384 F.3d 1372 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
Franklin Fed. Savings Bank v. United States,
55 Fed. Cl. 99 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
Friends of Yosemite v. Frizzell,
420 F.Supp. 397 (D.C.Cal. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
Gould v. United States,
29 Fed. Cl. 758 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Haitian Refugee Ctr. v. Civiletti,
614 F.2d 92 (5th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
Hart v. United States,
910 F.2d 815, 818-19 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
Hishon v. King & Spalding,
467 U.S. 69, 73 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Hopland Band of Pomo Indians v. United States,
855 F.2d 1573, 1576-77 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9
Howat v. Kansas,
258 U.S. 181 (1922) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
Huber v. United States,
27 Fed. Cl. 659, 661 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Independent Bankers Association v. Heimann,
627 F.2d 486 (D.C. Cir. 1980) (per curiam) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
JANA, Inc. v. United States,
936 F.2d 1265 (Fed. Cir.1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
Japanese War Notes Claimants Ass'n v. United States,
178 Ct. Cl. 630 (1967), cert. denied, 389 U.S. 971 . . . . . . . . . . . . . . . . . . . . . . . . . . 8
Johns-Manville Corp. v. United States,
12 Cl. Ct. 1 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Johnson v. Board of Regents of the Univ. of Ga.,
263 F.3d 1234 (11th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
Kelly v. Kelly,
901 F. Supp. 1567 (M.D. Fla. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Kokkonen v. Guardian Life Ins. Co. of Am.,
511 U.S. 375 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
LaMear v. United States,
9 Cl. Ct. 562 , aff'd, 809 F.2d. 789 (Fed. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
Laughlin v. United States,
22 Cl. Ct. 85 (1990) aff'd, 975 F.2d 869 (Fed. Cir.1992) . . . . . . . . . . . . . . . . . . . . . . . . . 8
Library of Congress v. Shaw,
478 U.S. 310 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
Marrero Land & Improvement Ass'n, Ltd. v. United States,
26 Cl. Ct. 193 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
McLaughlin v. Curtis Publ'g Co.,
5 F.R.D. 87 (S.D.N.Y. 1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
McNutt v. General Motors Acceptance Corp.,
298 U.S. 178 (1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Menominee Tribe v. United States,
726 F.2d 718 (Fed. Cir. 1984), cert. denied, 469 U.S. 826 (1984) . . . . . . . . . . . . . . . . 9, 10
Mitchell v. United States,
10 Cl. Ct. 63 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
Mitchell v. United States,
229 Ct. Cl. 1, 664 F.2d 265 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28
Nager Electric Co. v. United States,
177 Ct. Cl. 234, 368 F.2d 847 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
Nashville, Chattanooga & St. Louis Ry. v. United States,
113 U.S. 261, 266 (1885) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
OPM v. Richmond,
496 U.S. 414 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
Park County Resource Council, Inc. v. United States, Department of Agriculture,
817 F.2d 609 (10th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
Pawnee v. United States,
830 F.2d 187 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
Peterson v. United States,
68 Fed. Cl. 773 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6
Pigford v. Veneman,
292 F.3d 918 (D.C. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
Poett v. Merit Sys. Prot. Bd.,
360 F.3d 1377 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Portland Audobon Society v. Lujan,
884 F.2d 1241 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
Pulte Home Corp. v. Osmose Wood Preserving, Inc.,

60 F.3d 734 (11th Cir. 1995) . . . . . . . . . . 18
Pyramid Lake Paiute Tribe of Indians v. Morton,
499 F.2d 1095 (D.C. Cir. 1974) . . . . . . . . . . 28
Rogers v. Atwork Corp.,
863 F. Supp. 242 (E.D. Pa. 1994) . . . . . . . . . . 5
Rooker v. Fidelity Trust Co.,
263 U.S. 413 (1923) . . . . . . . . . . 18
Rosebud Sioux Tribe v. McDivitt,
286 F.3d 1031 (8th Cir. 2002) . . . . . . . . . . 3, 4
Rufo v. Inmates of the Suffolk County Jail,
502 U.S. 367 (1992) . . . . . . . . . . 17
Sauer v. United States,
173 Ct. Cl. 642, 354 F.2d 302 (1965) . . . . . . . . . . 8
Smith v. Schlesinger,
371 F. Supp. 559 (C.D. Cal. 1974) . . . . . . . . . . 11
Stoltzfus v. Ulrich,
587 F. Supp. 1226 (E.D. Pa. 1984) . . . . . . . . . . 6
Swift & Co. v. United States,
276 U.S. 311 (1928) . . . . . . . . . . 18
United Nuclear Corp. v. United States,
12 Cl. Ct. 45 (1987) . . . . . . . . . . 8
United States v. Alire,
73 U.S. 573 WL 11213 (1867) . . . . . . . . . . 19
United States v. Armour & Co.,
402 U.S. 673 (1971) . . . . . . . . . . 17
United States v. Babbitt,
104 U.S. 767 (1882) . . . . . . . . . . 18
United States v. Bd. of Educ. of the City of Chicago,
567 F. Supp. 290 (N.D. Ill. 1983) . . . . . . . . . . 18
United States v. Cannons Engineering Corp.,
899 F.2d 79 (1st Cir. 1990) . . . . . . . . . . 15
United States v. Mitchell ("Mitchell I"),
445 U.S. 535 (1980) . . . . . . . . . . 19-21
United States v. Mottaz,
476 U.S. 834 (1986) . . . . . . . . . . 9
United States v. Navajo Nation,
537 U.S. 488; S. Ct. 1079 (2003) . . . . . . . . . . 19, 22, 26
United States v. Nordic Village, Inc.,
503 U.S. 30 (1992) . . . . . . . . . . 20

United States v. Testan,
424 U.S. 392 (1976) . . . . . . . . . . 20, 21
Waldorf v. United States,
8 Cl. Ct. 321 (1985) . . . . . . . . . . 11

Walker v. City of Birmingham,
388 U.S. 307 (1967) . . . . . . . . . . 18

**FEDERAL STATUTES**

16 U.S.C. §§ 470 . . . . . . . . . . 3, 4
25 U.S.C. § 415(a) . . . . . . . . . . 8, 19, 22-26, 28
25 U.S.C. § 81(d)(2)(C) . . . . . . . . . . 26, 27
28 U.S.C. § 1491 . . . . . . . . . . 20
28 U.S.C. § 1491(a)(1) . . . . . . . . . . 20
28 U.S.C. § 1505 . . . . . . . . . . 20
28 U.S.C. § 2501 (1992) . . . . . . . . . . 7, 9
42 U.S.C. §§ 4321 . . . . . . . . . . 2
5 U.S.C. § 81 . . . . . . . . . . 26-28

**FEDERAL RULES**

Fed.R.Civ.P. 41(a)(2) . . . . . . . . . . 16
RCFC 12(b)(c) . . . . . . . . . . 7
RCFC 12(c) . . . . . . . . . . 1, 2, 5, 7

**STATE RULES**

D.C. Bar No. 430118 . . . . . . . . . . 29
Federal Practice and Procedure § 1367 . . . . . . . . . . 5
Federal Rule of Civil Procedure 41(a)(2) . . . . . . . . . . 16

**FEDERAL REGULATIONS**

25 C.F.R. part 162 . . . . . . . . . . 23
25 C.F.R. § 84.004(a) . . . . . . . . . . 27

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **ROSEBUD SIOUX TRIBE, a federally recognized Indian Tribe,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 05-1023L** |
| **v.** | ) | |
| | ) | **Judge James F. Merow** |
| **THE UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**
**AND MEMORANDUM IN SUPPORT THEREOF**

Defendant, the United States of America, hereby moves for judgment on the pleadings pursuant to RCFC 12(c). In support thereof, Defendant submits the following memorandum.

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION**
**FOR JUDGMENT ON THE PLEADINGS**

## I. INTRODUCTION

In this case, the Rosebud Sioux Tribe seeks to recover its costs and attorneys' fees incurred in prior federal district court litigation involving a land lease to develop a large hog farm located on tribal trust land. That litigation, which was brought before the United States District Court for the District of South Dakota, was ultimately resolved through the entry of a Consent Judgment negotiated by the lessee, the Tribe, and the United States. Despite the fact that the Consent Judgment resulted in lease terms that were more favorable to the Tribe than were those contained in the original Land Lease, the Tribe now seeks to impermissibly re-litigate the validity of the Land Lease within the context of its claims that the United States breached its fiduciary duties owed the Tribe by approving the Land Lease, subsequently declaring the original Land Lease void, engaging in settlement discussions with represented parties to the litigation, and approving a land lease that

contained a provision waiving the Tribe's sovereign immunity.

As set forth below, Plaintiff's claims suffer from jurisdictional infirmities because they are barred by the applicable statute of limitations and barred by the equitable doctrine of laches. Moreover, Plaintiff's action constitutes an impermissible attempt to collaterally attack a final and decreed consent order and judgment that Plaintiff negotiated and supported. In addition, Plaintiff has failed to identify a breach of a statutory or regulatory provision that, fairly interpreted, mandates compensation. Finally, the damages Plaintiff seeks are not direct damages that arguably could be compensable under the statutes alleged, but are attorneys fees and costs that would need to be the subject of a separate waiver of sovereign immunity. For these reasons, Plaintiff's Complaint warrants dismissal under RCFC 12(c). Accordingly, the United States respectfully requests that its Motion for Judgment on the Pleadings be granted.

## II. <u>FACTUAL BACKGROUND</u>

In the spring of 1998, the Rosebud Sioux Tribe and the partnership Sun Prairie agreed to negotiate a lease for the development of a large hog facility comprised of 13 sites on tribal trust land in Mellette County, South Dakota. Complaint at ¶5. An environmental assessment (EA) was prepared pursuant to the National Environmental Policy Act, 42 U.S.C. §§ 4321, *et seq.* ("NEPA"), and was released on August 14, 1998. Complaint at ¶13. The BIA Rosebud Agency Superintendent signed a Finding of No Significant Impact on the same day. Complaint at ¶16.

On August 19, 1998, the Rosebud Sioux Tribal Council adopted Tribal Resolution #98-203, which approved the project and authorized the Tribal President to execute the lease with Sun Prairie. Complaint at ¶17. The Tribal President and Sun Prairie executed the lease on September 9, 1998. Complaint at ¶18. On September 16, 1998, the BIA Aberdeen Area Director approved the lease.

Complaint at ¶19. Sun Prairie then secured financing and completed two of the proposed 13 sites. Complaint at ¶¶ 21, 22.

On November 23, 1998, a coalition of organizations including the Concerned Rosebud Area Citizens, filed suit against the United States in the United States District Court for the District of Columbia seeking to enjoin the construction of the project for an alleged failure to comply with NEPA and the National Historic Preservation Act, 16 U.S.C. §§ 470, *et seq*. *See Concerned Rosebud Area Citizens v. Babbitt*, 34 F. Supp. 2d 775 (D.D.C. 1999); Complaint at ¶23. On January 27, 1999, the Assistant Secretary - Indian Affairs voided the lease on the basis that it was insufficiently supported by NEPA. Complaint at ¶28. The parties to that suit then entered into a joint stipulation of dismissal of the case on January 28, 1999. Complaint at ¶30.

On February 3, 1999, the Tribe and Sun Prairie filed *Rosebud Sioux Tribe v. Gover*, Civ. No. 99-3003, in the United States District Court for the District of South Dakota, challenging the Assistant Secretary's authority and decision to void the lease. Complaint at ¶31. In the Plaintiffs' Motion for Temporary Restraining Order (*Rosebud Sioux Tribe v. Gover*, docket entry #3), also filed on February 3, 1999, the Tribe and Sun Prairie sought an order from the South Dakota district court "specifically restraining, enjoining, and prohibiting" Defendants from implementing or enforcing the Assistant Secretary's decision. *See Rosebud Sioux Tribe v. Gover*, docket entry #3 at page 1. The court ruled in favor of the Plaintiffs and permanently enjoined the government from taking any action that would interfere with the construction of the project. *Rosebud Sioux Tribe v. McDivitt*, 286 F.3d 1031 (8th Cir. 2002). While on appeal to the United States Court of Appeals for the Eighth Circuit, the Tribe obtained approval from the appellate court to realign itself with the government. *Id.* at 1035. On April 5, 2002, the appellate court found that Sun Prairie lacked standing to challenge

the Assistant Secretary's decision. *Id.* at 1036-39.

On August 15, 2002, Sun Prairie filed a new suit in the United States District Court for the District of South Dakota against the Tribe and the government, *Sun Prairie v. Martin*, Civ. No. 02-3030, seeking declaratory and injunctive relief. Complaint at ¶33. On June 5, 2003, the South Dakota district court ruled on the motions to dismiss filed in that matter and found the lease to be valid. Complaint at ¶35. Subsequent to the court's ruling, the Tribe, the government, and Sun Prairie entered into settlement negotiations, which resulted in a settlement agreement and the filing of a Joint Motion to Enter Consent Judgment. *See Sun Prairie v. Cason*, docket entry #155. Specifically, in their Joint Motion, the parties sought the court's entry of "the Parties' Consent Judgment memorializing their voluntary settlement of the [lawsuit]." *Id.* at 1. On May 19, 2005, the court approved the Consent Judgment submitted by the Tribe, the government, and Sun Prairie and executed by their respective counsel. *See Sun Prairie v. Cason*, docket entry # 163 (filed May 19, 2005). The Judgment by Consent and Order (docket entry #164) (hereinafter "Consent Judgment") vacated the January 27, 1999, letter of the Assistant Secretary, and provided that Sun Prairie would construct no more hog farm sites beyond the two that were complete and operational. *Id.*

On June 24, 2005, Concerned Rosebud Area Citizens filed suit in the United States District Court for the District of Columbia seeking declaratory relief against the government for claims based on NEPA. *Concerned Rosebud Area Citizens v. Norton*, Civil Action No. 05-1275 (JR). On March 30, 2006, the court granted the government's motion to transfer the case to the federal district court in South Dakota. *See* Memorandum Order (docket entry #12) filed in *Concerned Rosebud Area Citizens v. Norton*. That case remains pending before the South Dakota district court.

On September 23, 2005, Plaintiff filed this action seeking an award of damages for a breach of the United States' fiduciary duty allegedly "owed to Plaintiff with regard to the Land Lease." Complaint at p. 6, ¶ 1. For the reasons set forth below, the United States, pursuant to RCFC 12(c), now brings this Motion for Judgment on the Pleadings.

## III. ARGUMENT

### A. Standard of Review

RCFC 12(c) provides that, "[a]fter the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings." RCFC 12(c). While a challenge to the Court's subject matter jurisdiction is typically brought pursuant to a 12(b)(1) motion, it may, after the filing of an answer, also be raised in a motion for judgment on the pleadings. *See, e.g., Alanzo v. Chase Manhattan Bank, N.A.*, 25 F. Supp. 2d 455, 457 (S.D.N.Y. 1998) (citing *Formula One Motors, Ltd. v. United States*, 777 F.2d 822 (2d Cir. 1985)); *Kelly v. Kelly*, 901 F. Supp. 1567, 1569 (M.D. Fla. 1995); and *Rogers v. Atwork Corp.*, 863 F. Supp. 242, 244 (E.D. Pa. 1994). *See also* 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1367, at 516 (1990) ("Wright & Miller").

The legal standard to be applied to a 12(c) motion is the same as that for a motion to dismiss. *See Peterson v. United States*, 68 Fed. Cl. 773, 776 (2005). It is well established that it is the plaintiff that bears the burden of establishing the court's jurisdiction. *See McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998). When considering a motion for judgment on the pleadings, all facts must be assumed as true and construed in the light most favorable to the plaintiff. *See Marrero Land & Improvement Ass'n, Ltd. v. United States*, 26 Cl. Ct. 193, 194-95 (1992). "A court may dismiss a

complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. . . ." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). "[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Bond v. United States*, 47 Fed. Cl. 641, 647 (2000) (quoting *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981), *aff'd*, 460 U.S. 325 (1983)).

Here, as set forth more fully below, Plaintiff asserts claims that are barred by the applicable statute of limitations and barred by the equitable doctrine of laches. Moreover, Plaintiff's action constitutes an impermissible attempt to collaterally attack a final and decreed consent order and judgment that Plaintiff negotiated and supported. For these reasons -- even after applying the relevant legal standard and assuming that the facts asserted in Plaintiff's Complaint are true and construed in the light most favorable to Plaintiff -- this Court lacks jurisdiction to review Plaintiff's claims.

Similarly, motions to dismiss for failure to state a claim filed after the filing of an answer have routinely been construed as motions for judgment on the pleadings. *See Peterson v. United States*, 68 Fed. Cl. at 776 (citing *Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir. 1980); *Stoltzfus v. Ulrich*, 587 F. Supp. 1226, 1228 (E.D. Pa. 1984); *Beckham v. Grand Affair of N.C., Inc.*, 671 F. Supp. 415, 420 (W.D.N.C. 1987); *McLaughlin v. Curtis Publ'g Co.*, 5 F.R.D. 87, 87 (S.D.N.Y. 1943); *Huber v. United States*, 27 Fed. Cl. 659, 661 (1993); *Gould v. United States* 29 Fed. Cl. 758, 761 (1993)). In evaluating a motion for judgment on the pleadings based on a failure to state a claim, the court must measure the alleged claim "by a standard that measures all facts thus far identified taken against the legal components of a given cause of action to see if a valid claim has been stated." *Johns-Manville Corp. v. United States*, 12 Cl. Ct. 1, 15 (1987). Applying this standard

here, Plaintiff has failed to state a claim for a breach of a fiduciary duty and, as such, dismissal based on RCFC 12(c) is appropriate.

Finally, a motion for judgment on the pleadings must be filed "within such time as not to delay the trial." RCFC 12(c). Here, no trial has been set, and the litigation is at an early stage; only the pleadings and the Parties' Joint Preliminary Status Report have been filed at this juncture. *See* docket entries #1, #3, and #8. Thus, Defendant's Motion for Judgment on the Pleadings is timely.

## B. Plaintiff's Claims Regarding the Initial Lease Approval and Rescission are Barred by the Statute of Limitations.

Plaintiff asserts that the United States breached a fiduciary duty by approving the Land Lease on September 16, 1998. Complaint at ¶ 40. Plaintiff also contends that the January 27, 1999, "Gover Letter," which stated that BIA's approval of the lease was void for failure to fully comply with NEPA, was also a breach of the United States' duty owed to Plaintiff. *Id.* Both of these agency actions, however, occurred more than six years before Plaintiff brought its action and, thus, any claim that either the initial lease approval or its withdrawal somehow breached a fiduciary duty is time-barred. Accordingly, all claims regarding the initial lease approval and the subsequent decision to void the lease should be dismissed pursuant to RCFC 12(b)(c).

The governing statute of limitations for Plaintiff's claims here is 28 U.S.C. § 2501 (1992)[1/], which provides:

> Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues.

---

[1/] The Indian Long-Term Leasing Act, 25 U.S.C. § 415(a), which Plaintiff claims is the basis for its suit for money damages in this Court (*see* Complaint at ¶ 4), does not contain a separate statute of limitations.

The Federal Circuit has held that § 2501 "is jurisdictional in nature and, as an express limitation of the waiver of sovereign immunity, may not be waived." *Hart v. United States*, 910 F.2d 815, 818-19 (1990); *Laughlin v. United States*, 22 Cl. Ct. 85, 99 (1990), *aff'd*, 975 F.2d 869 (Fed. Cir.1992); and *Catellus Dev. Corp. v. United States*, 31 Fed. Cl. 399, 404 (1994). This Circuit also held that "[t]he 6-year statute of limitations on actions against the United States is a jurisdictional requirement attached by Congress as a condition of the government's waiver of sovereign immunity and, as such, must be strictly construed." *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1576-77 (Fed. Cir. 1988). The limitation language is "a dispositive jurisdictional inquiry for this court." *LaMear v. United States*, 9 Cl. Ct. 562, 568, *aff'd*, 809 F.2d. 789 (Fed. Cir. 1986).

A claim against the United States accrues "when all events have occurred which fix the alleged liability of the United States and entitle the claimant to institute an action." *Japanese War Notes Claimants Ass'n v. United States*, 178 Ct. Cl. 630, 632, 373 F.2d 356, 358 (1967), *cert. denied*, 389 U.S. 971; *Nager Electric Co. v. United States*, 177 Ct. Cl. 234, 240, 368 F.2d 847, 851 (1966); *Mitchell v. United States*, 10 Cl. Ct. 63, 66-67 (1986); *United Nuclear Corp. v. United States*, 12 Cl. Ct. 45, 49 (1987) (*citing Sauer v. United States*, 173 Ct. Cl. 642, 647, 354 F.2d 302, 304 (1965). The statute of limitations will not be tolled unless the facts underlying the claim are either fraudulently concealed or inherently unknowable. *See Menominee Tribe v. United States*, 726 F.2d 718, 721-22 (Fed. Cir. 1984), *cert. denied*, 469 U.S. 826 (1984); *Hopland Band of Pomo Indians v. United States*, 855 F.2d at 1577. In such an event, the burden of proof rests upon the plaintiff to justify and prove that the facts are so concealed or unknowable so as to delay or toll the running of the limitations period against each respective claim. *Brown v. United States*, 195 F.3d 1334 (Fed. Cir. 2000); *Cochran v. United States*, 19 Cl. Ct. 455, 458 (1990).

The fact that the Plaintiff here is an Indian tribe and that issues of a trust relationship between the United States and the Tribe are involved in the claims does not toll the running of the claims bar established by 28 U.S.C. § 2501. *Menominee Tribe v. United States*, *supra*, 726 F.2d at 721. Statutes of limitations are to be applied against the claims of Indian tribes in the same manner as against any other litigant seeking legal redress or relief from the government. *See United States v. Mottaz*, 476 U.S. 834 (1986); *Andrade v. United States*, 202 Ct. Cl. 988, 991, 996, 485 F.2d 660, 661, 664 (Ct. Cl. 1973), *cert. denied*, 419 U.S. 831 (1974); *Capoeman v. United States*, 440 F.2d 1002, 1007-08, 194 Ct. Cl. 664 (1971).

The statute of limitations began to run in this case on the date that the claim first accrued, that is, when the activities claimed to be wrongful first occurred. Unless these events were inherently unknowable, the generous six year statute of limitations to bring suit begins to run. *See Menominee Tribe v. United States*, *supra*, 726 F.2d at 721. With regard to Plaintiff's claim that Defendant breached its fiduciary duty by approving the Land Lease, the statute of limitations began to run on September 16, 1998[2/]; with regard to Plaintiff's claim that Defendant breached its fiduciary duty by declaring the Land Lease void, the statute of limitations began to run on January 27, 1999. The allegations of the Complaint clearly reveal that the Tribe was aware that: 1) the BIA approved the Land Lease; 2) the Land Lease included a provision waiving the Tribe's sovereign immunity; and 3) the BIA concluded on January 27, 1999, that the initial NEPA analysis was insufficient and, as such, the Land Lease was void. *See* Complaint at ¶¶ 17-20, 28-29. Despite this knowledge, Plaintiff failed to assert in any subsequent judicial proceeding, or in any correspondence or notice

---

[2/] The statute of limitations with regard to Plaintiff's claim that Defendant breached its fiduciary duty by approving a land lease that contained a waiver of the Tribe's sovereign immunity likewise began to run on September 16, 1998.

submitted to the United States, that either the initial lease approval or its rescission constituted a breach of the United States' trust responsibility. Indeed, a review of the varying positions taken by the Plaintiff in the South Dakota litigation reveal that the Plaintiff initially sought an order from the court seeking to treat the Land Lease as being valid (*Rosebud Sioux v. Gover*, Civ. No. 99-3003 (D.S.D.)), then in the next lawsuit (*Sun Prairie v. Martin*, Civ. No. 02-3030) realigned itself as a Defendant and supported the United States' position that the Land Lease was void, and then, following settlement negotiations, ultimately took the position and urged the court to once again consider the Land Lease valid (*see id.*, docket entry #155). In essence, not once during the several lawsuits that followed the initial approval of the Land Lease did Plaintiff ever allege a breach of any fiduciary duty of the United States or seek a judicial determination of such a breach. Thus, any claim relating to the United States' approval of the Land Lease or the United States' subsequent decision to declare the Land Lease void is time-barred.

**C. <u>Plaintiff's Claims are Barred by the Equitable Doctrine of Laches.</u>**

Even if the statute of limitations were not a bar, the equitable doctrine of laches applies to bar Plaintiff's claims. An action may be barred by the equitable doctrine of laches if (1) there has been unreasonable delay in bringing suit, and (2) the party asserting the defense has been prejudiced by the delay. *Poett v. Merit Sys. Prot. Bd.*, 360 F.3d 1377, 1384 (Fed. Cir. 2004); *JANA, Inc. v. United States*, 936 F.2d 1265, 1269-70 (Fed. Cir.1991); *Park County Resource Council, Inc. v. United States, Department of Agriculture*, 817 F.2d 609, 617 (10th Cir. 1987). *See also Costello v. United States*, 365 U.S. 265, 282 (1961); *Independent Bankers Association v. Heimann*, 627 F.2d 486 (D.C. Cir. 1980) (*per curiam*). This defense is based "on the principle that equity aids the vigilant, not those who sleep on their rights." *Dalsis v. Hills*, 424 F. Supp. 784, 788 (W.D.N.Y.

1976). Moreover, it is well established that monetary claims against the United States are subject to laches. *See, e.g.*, *Waldorf v. United States*, 8 Cl. Ct. 321, 326 (1985).[3]

In this case, it is clear that the Plaintiff was an active participant in the process of developing the Land Lease and in the litigation that followed. *See generally* Complaint. Yet, during that time-frame, while Sun Prairie invested tens of millions of dollars in the two operating sites at the Reservation, Plaintiff slept on any claim that the United States had somehow violated a trust responsibility. *See* Complaint at ¶¶ 21-22. The facilities were constructed and became operational years ago, and short of outright closure those steps are irreversible. Moreover, the Tribe has, both

---

[3] While mere lapse of time does not amount to laches, *see, e.g.*, *Bannum, Inc. v. United States*, 60 Fed. Cl. 718, 728 (2004), the passage of time is an important factor to be considered in a laches analysis. *See, e.g.*, *Apache Survival Coalition v. United States*, 21 F.3d 895, 910 (9th Cir. 1994) (applying laches analysis to dismiss claims when relief was not sought until long after applicable federal activity was underway):

> Furthermore, we have no difficulty finding that the six year period between 1985, when the Tribe first was solicited for input, and the date of filing suit constitutes unreasonable delay, particularly when the Coalition's filing came two years after the relevant agency action. *See, e.g.*, [*id.*] at 1338-39 (three year delay resulted in laches), *National Parks*, 679 F. Supp. at 53 (same), *City of Rochester*, 541 F.2d at 977 (finding inexcusable delay when suit was filed less than two years after the relevant agreement), *Friends of Yosemite*, 420 F. Supp. at 397 (finding sufficient delay when suit was filed "over 3 years after the project was publicized and over 2 years after [the relevant agency action]"), *Smith v. Schlesinger*, 371 F. Supp. 559, 561 (C.D. Cal. 1974) (finding inexcusable delay when suit was filed over seven months after work on a project had begun). It is also relevant that the Coalition did not move for injunctive relief until eight months following the filing of the complaint, long after construction was underway. *See Citizens & Landowners Against the Miles City/New Underwood Powerline v. Secretary U.S. Department of Energy*, 683 F. 2d 1171, 1176-77 (8th Cir. 1982), *Clarke*, 342 F. Supp at 1329. In short, a finding of inexcusable delay in this case is especially appropriate because "[t]he history leading up to the filing of this case ... is a clear case of parties sleeping on their rights." *In re Citizens*, 513 F. Supp. at 264; *Of Portland Audubon Society*, 884 F.2d at 1241 (expressing concern that "a plaintiff [might] 'sandbag[]' a defendant by bring a late suit").

*Apache Survival Coalition*, 21 F.3d at 910.

before entry of the Consent Judgment and since, received considerable economic benefit from the presence of the facilities.[4] During this same time-frame, the United States sought to foster economic development on Plaintiff's Reservation in an environmentally sound manner and ultimately supported a stronger lease for the Tribe that reflects the Tribe's concerns with the ongoing operations by Sun Prairie and was endorsed by the South Dakota district court.[5]

Despite all that has occurred, including what the United States thought was an amicable resolution of years of litigation endorsed by Sun Prairie, the Tribe, the United States, and the South Dakota district court, Plaintiff now alleges that the United States' conduct with regard to the Land Lease -- conduct that occurred more than six years before this action was filed-- constitutes a breach of a fiduciary duty owed Plaintiff. In addition, Plaintiff goes one step farther and alleges that it was threatened to accept the settlement that resulted in the Consent Judgment (Complaint at ¶40). By making this allegation, Plaintiff ignores the reality that the Tribe was represented by competent counsel throughout the previous litigation (including the same counsel representing Plaintiff in this case), the Tribe's governing body approved the settlement incorporated into the Consent Judgment, the Tribe signed and filed a Joint Motion urging the South Dakota district court to accept the

---

[4] Under the Consent Judgment, the Plaintiff receives fixed payments from Sun Prairie for use of the land, at $60,000 to $75,000 per site per year. In addition, Sun Prairie must pay the Plaintiff for water usage, including a fixed payment for groundwater where applicable. Sun Prairie is also required to make a lump sum payment for past water usage and agreed to environmental monitoring which exceeds applicable federal standards in stringency. Furthermore, the Consent Judgment provides Plaintiff with the option of purchasing the facilities at the close of the lease on very favorable terms. *See Sun Prairie v. Martin*, Civ. No. 02-3030 (docket entry #163)

[5] The voiding of the original Land Lease due to a determination that the NEPA analysis was incomplete did not prevent construction and operation of facilities that have substantially benefitted the Tribe.

settlement and enter the Consent Judgment. Plaintiff also ignores the fact that the revised lease negotiated and made part of the Consent Judgment, itself, contains terms that are even more favorable to Plaintiff than the terms contained in the original Land Lease. In essence, by bringing this action, Plaintiff is essentially asking this Court to assume jurisdiction over the legality of the Consent Judgment and issue an order declaring that it is the result of multiple breaches of a cognizable fiduciary duty for which money damages comprised of "the cost and expense of defending litigation related to Defendants Lead [sic] Lease approvals," are owed. Complaint at ¶ 42. Quite simply, if Plaintiff had been unhappy with the terms of the negotiated settlement, it had the option to reject it. To the contrary, Plaintiff accepted and supported the settlement and urged the South Dakota district court to do the same. At this late date, after securing a favorable resolution to the prior litigation, Plaintiff should be barred from essentially trying to renegotiate the terms of the Consent Judgment.

Allowing Plaintiff to pursue its claims now after failing to raise them before the settlement was reached and the Consent Judgment entered would have serious adverse effects upon both the interests of the United States and of the lessee, Sun Prairie. It would undermine the Consent Judgment that the Tribe, Sun Prairie, and the United States carefully negotiated and, without qualification, agreed to. It would also call into question the obligations and expectations of the parties to that settlement. In addition, such a result would have a chilling effect on the willingness of the United States to compromise litigation brought against or involving Indian tribes; if a tribe independently represented by competent counsel can later claim it is owed money damages for a breach of a fiduciary duty because it believes it was strong-armed by the United States into accepting a settlement, the finality of any settlement reached with a tribe would be suspect.

Accordingly, because Plaintiff did not bring its claims earlier and because allowing them to go forward at this late date would have serious consequences, Plaintiff's claims are barred by the equitable doctrine of laches.

**D. Plaintiff's Lawsuit Should Be Dismissed for Lack of Jurisdiction Because It Constitutes an Impermissible Attempt to Collaterally Attack a Final and Decreed Consent Judgment.**

Despite the fact that it: 1) participated in settlement negotiations; 2) had competent legal representation throughout the prior litigation (including representation by the same counsel representing Plaintiff here); 3) authorized appropriate representatives to sign the Consent Judgment; 4) signed and filed a Joint Motion urging the South Dakota district court to enter the Consent Judgment; and 5) never voiced to the South Dakota district court any concern regarding or objection to the entry of the Order and Judgment, Plaintiff's lawsuit constitutes an impermissible attempt collaterally attack the Consent Judgment entered by the South Dakota district court. Plaintiff cannot try to bypass this collateral attack by asking this Court to award it damages in the form of litigation costs and expenses incurred in prior litigation because it believes it was somehow "pressured" to enter into a settlement. This Court has no jurisdiction to entertain such a claim.

As explained earlier, Plaintiff was represented by independent competent counsel and participated in settlement discussions that resulted in a final Consent Judgment. Pursuant to a Joint Motion, which was signed and filed by the Tribe, the South Dakota district court approved the settlement and thereby revised the lease terms. If the Plaintiff had an objection to the Consent Judgment or otherwise felt that it was being treated unfairly, it should have voiced that concern or simply refused to sign the Consent Judgment. Instead, the settlement was agreed-to and the Consent Judgment was entered. Plaintiff cannot now collaterally attack the final Consent Judgment and

bypass its continued supervision by the South Dakota district court by asking this Court to decree that the Consent Judgment or the process through which it was accomplished resulted in a violation of a trust responsibility. That argument could and should have been made to the South Dakota district court, or Plaintiff should have refused to sign the Consent Judgment.

The standard for judicial approval of consent decrees and settlement agreements is that they be fair, reasonable, consistent with statutory intent, and in the public interest. *United States v. Cannons Engineering Corp*., 899 F.2d 79 (1st Cir. 1990). If the court determines that the agreed-upon relief satisfies these requirements, it will enter the decree. That is precisely what happened here. Moreover, the South Dakota district court explicitly retained jurisdiction for enforcement of the Consent Judgment to "protect its proceedings and vindicate its authority." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380 (1994).

Under Federal Rule of Civil Procedure 41(a)(2), a court has the authority to enforce a settlement agreement if it explicitly retains such authority in its dismissal order. *Id.* at 381-82. This is so because Rule 41(a)(2) specifies that once defendant has filed an answer or a summary judgment motion, an action "shall not be dismissed at the plaintiff's instance save upon order of the court and *upon such terms and conditions as the court deems proper*." *Id.* (citing Fed.R.Civ.P. 41(a)(2)) (emphasis added). Nonetheless, rather than objecting at the time to the entry of the Consent Judgment, which it negotiated and freely endorsed, Plaintiff now seeks to effectively circumvent the Consent Judgment, the revised lease that resulted from it, and the continuing role of the federal district court in enforcing it. By asking this Court to find that the United States breached its fiduciary duty and award Plaintiff money damages comprised of litigation costs and expenses incurred in the prior litigation, Plaintiff ignores well-settled principles of comity and jurisdiction.

Plaintiff was neither coerced into settling nor lacked ample opportunity to structure the settlement terms, object to any provision it found lacking, or refuse to settle altogether. Plaintiff does not and cannot contend that the South Dakota district court erred in applying clearly articulated principles to the review of the Consent Judgment that was before it. Instead, it simply seeks a better deal from this Court, by effectively asking for a determination that the Consent Judgment, or at least the process that resulted in it, was unfair. This Court has no jurisdiction to entertain such a claim.

A consent judgment is not only a contractual settlement between the parties, but an order of the court, and, therefore, warrants different treatment from an ordinary contract. *See, e.g., Rufo v. Inmates of the Suffolk County Jail*, 502 U.S. 367, 378 (1992); *Pigford v. Veneman*, 292 F.3d 918, 923 (D.C. Cir. 2002). A federal district court possesses "inherent power" to enforce its orders. *See, e.g., Pigford*, 292 F.3d at 924 (court has jurisdiction to enforce consent decree insofar as terms of decree and court order provide); *Armstrong v. Executive Office of the President*, 1 F.3d 1274, 1289 (D.C. Cir. 1993) (court has inherent power to enforce its orders through civil contempt). Thus, when a plaintiff sues in district court alleging a breach of a consent decree entered by that court, the district court has inherent or ancillary jurisdiction to hear the case and enforce its own orders. *See Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280, 282, 286 (D.C. Cir. 1993) (holding that trial court retains jurisdiction to enforce its consent decrees). Conversely, no other court has jurisdiction.

Settlement through a consent decree or judgment allows both parties to agree on "precise terms" after "careful negotiation." *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971). In return for this benefit, the parties "each give up something they might have won had they proceeded with the litigation." *Id*. Defendants "waive( ) their right to make plaintiffs establish at trial that they were entitled to all the relief afforded them by the consent decree" (*Duran v. Carruthers*, 885 F.2d

1485, 1490 (10th Cir. 1989), *cert. denied*, 110 S. Ct. 865 (1990)), but gain the ability to "define and limit" their obligations. *Brown v. Neeb*, 644 F.2d 551, 562 (6th Cir. 1981). These principles should be upheld here.

Plaintiff waived any right it may have had to request “something more” from the United States when it agreed to the specific measures defined in the Consent Judgment rather than going through litigation to establish what various rights and responsibilities existed. Plaintiff’s assumption that it can secure from this Court what it was unwilling to seek or obtain during the prior litigation contravenes this basic rule.[6] Such a result would deprive the United States of the “benefit of its

---

[6] Because the Consent Judgment is in place, Plaintiff's claims cannot be evaluated apart from the context created by the Consent Judgment. *See, e.g., United States v. Bd. of Educ. of the City of Chicago*, 567 F. Supp. 290 (N.D. Ill. 1983) (rejecting action brought in different court as improper collateral attack). Even if the District of South Dakota had erroneously issued decrees against Plaintiff, because it retains subject matter jurisdiction over the matter, its decrees and judgments are not "void" and cannot be collaterally attacked. Rather, any error by such a court could only render its judgments and decrees "voidable," and subject to attack by motion in that court or by appeal to such courts as have appellate jurisdiction over the issuing court. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415 (1923); *Howat v. Kansas*, 258 U.S. 181, 189-90 (1922); *Walker v. City of Birmingham*, 388 U.S. 307 (1967). Moreover, the time for appeal of the Consent Judgment, which would properly be brought before the Eighth Circuit Court of Appeals, has passed. The rule that consent judgments are not subject to appellate review would apply and there is certainly no justification for review by another court. Although the Supreme Court has held that "consent judgments" are final and appealable, the Court has also stressed that the act of giving consent usually waives the consenting party's right to review, leading to affirmance "without considering the merits of the cause." *Nashville, Chattanooga & St. Louis Ry. v. United States*, 113 U.S. 261, 266 (1885). *See also Swift & Co. v. United States*, 276 U.S. 311 (1928); *United States v. Babbitt*, 104 U.S. 767 (1882); *Association of Community Organizations for Reform Now v. Edgar*, 99 F.3d 261 (7th Cir.1996). A party who fails to raise an issue or objection in the district court waives the right to appeal that issue. *See Johnson v. Board of Regents of the Univ. of Ga.*, 263 F.3d 1234, 1267 (11th Cir. 2001) (rejecting plaintiffs' standing argument because it was not raised below); *Pulte Home Corp. v. Osmose Wood Preserving, Inc.*, 60 F.3d 734, 739 (11th Cir. 1995) (party who acquiesced in district court's choice of law waived right to challenge on appeal); *see also Haitian Refugee Ctr. v. Civiletti*, 614 F.2d 92 (5th Cir. 1980) (holding that a party cannot appeal from an injunction to which it agreed). Because the Plaintiff has no ability to challenge the terms of the Consent Judgment in either the district court or the court of appeals, it certainly lacks the ability to do so here.

bargain" and vitiate the purpose of entering into the Consent Judgment. Thus, this action constitutes an impermissible collateral attack on the Consent Judgment, and, accordingly, should be dismissed.

### E. Plaintiff Has Failed to Identify a Breach of a Statutory or Regulatory Provision that Can Be Fairly Interpreted to Mandate Compensation.

In this case, Plaintiff contends that the United States breached its fiduciary duty to the Tribe by initially approving the Land Lease, declaring it void, and then threatening to once again approve the Land Lease if Plaintiff did not settle the South Dakota district court litigation. Complaint at ¶ 40. Plaintiff also alleges that the United States breached its "fiduciary duty to the Tribe by approving a land lease that contained a waiver of the Tribe's sovereign immunity." *Id.* at ¶ 41. As damages for these alleged breaches, Plaintiff claims that it "has suffered damages including but not limited to the cost and expense of defending litigation related to the Defendants Lead [sic] Lease approvals." *Id.* at ¶ 42. Plaintiff further asserts that the basis for its action for money damages in this Court is the Indian Long-Term Leasing Act, 25 U.S.C. § 415(a), which "creates a fiduciary duty upon the [United States]." Complaint at ¶ 4. As set forth below, however, Plaintiff's claim must fail because: 1) the United States' conduct with regard to the Land Lease does not constitute a breach of its duties under the Indian Long-Term Leasing Act; 2) the Consent Judgment sets forth the final word on the Land Lease and may not be disturbed; and 3) the damages Plaintiff seeks are not recoverable absent express statutory authority. Thus, Plaintiff's Complaint warrants dismissal.

"It is elementary that '[t]he United States, as sovereign, is immune from suit save as it

consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Navajo Nation*, 537 U.S. 488, 123 S. Ct. 1079, 1089 (2003); and *United States v. Mitchell* ("*Mitchell I*"), 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). *See also Eastern Transp. v. United States*, 272 U.S. 675, 686 (1927); and *United States v. Alire*, 73 U.S. 573, 575 WL 11213 (1867). In determining when such consent is present, the Supreme Court has long held that "[a] waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'" *Mitchell I*, 445 U.S. at 538 (*quoting United States v. King*, 395 U.S. 1, 4 (1969)); *accord College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 682 (1999); and *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34 (1992).

Congress has consented to be sued on certain claims for money damages in the Court of Federal Claims by the Tucker Act which grants this Court jurisdiction with respect to

> any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. 1491§ (a)(1).

The Tucker Act, which Plaintiff claims, along with the Indian Tucker Act, 28 U.S.C. § 1505, is the waiver of sovereign immunity applicable here (*see* Complaint at ¶ 3), does not, however, by itself, "create any substantive right enforceable against the United States for money damages." *United States v. Mitchell ("Mitchell II"),* 463 U.S. at 216; *see Army & Air Force Exchange Serv. v. Sheehan*, 456 U.S. 728, 738 (1982); and *United States v. Testan*, 424 U.S. 392,

398 (1976). Thus, in order to state a cause of action under one of the Tucker Acts[7], a plaintiff suing other than for breach of contract must point to some other "Act of Congress," or a "regulation of an executive department," 28 U.S.C. § 1491(a)(1), that "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *Mitchell II*, 463 U.S. at 216-17 (*quoting Testan*, 424 U.S. at 400, and *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1009 (Ct. Cl. 1967)); *see Bowen v. Massachusetts*, 487 U.S. 879, 905-906, n.42 (1988); *Sheehan*, 456 U.S. at 739. The requisite waiver of sovereign immunity is present under the Tucker Acts if, and only if, "a claim falls within th[at] category." *Mitchell II*, 463 U.S. at 218; *see OPM v. Richmond*, 496 U.S. 414, 431 (1990).

The Supreme Court has observed that "the substantive source of law may grant the claimant a right to recover damages either 'expressly or by implication.'" *Mitchell II*, 463 U.S. at 217 n.16; *but cf. Sheehan*, 456 U.S. at 739-40 ("*Testan* [held] that the Tucker Act provides a remedy only where damages claims against the United States have been authorized explicitly."). But, the Court is reluctant to recognize a damages remedy against the United States under the Tucker Acts when a statute does not clearly sanction one. *See Testan*, 424 U.S. at 400 ("We are not ready to tamper with these established principles [concerning the reach of the Tucker Act] because it might be thought that they should be responsive to a particular conception of enlightened governmental policy."); *see also Mitchell II*, 463 U.S. at 218 ("Of course, in determining the general scope of the Tucker Act, this Court has not lightly inferred the United States' consent to suit.") (citing cases). That restraint reflects the general rule that waivers of

[7] The Indian Tucker Act also permits claims by an Indian Tribe based on a treaty of the United States or an Executive Order of the President. 28 U.S.C. § 1505. No such claim is at issue here.

sovereign immunity must be unequivocally expressed. *See Mitchell I*, 445 U.S. at 538; *Richmond*, 496 U.S. at 432.

When the claimant is an Indian tribe or individual asserting that the United States has breached its trust responsibility over an Indian resource, the claimant likewise must identify a statute, treaty, or regulation that imposes a specific fiduciary duty on the United States. *United States v. Mitchell*, 445 U.S. 535, 542-43 (1980) ("*Mitchell I*"). The United States has a general trust relationship with Indian tribes, but "that relationship alone is insufficient to support jurisdiction under the Indian Tucker Act." *Navajo III*, 537 U.S. at 506. "Instead, the analysis must train on specific rights-creating or duty-imposing statutory or regulatory prescriptions." *Id.*; *see also Mitchell II*, 463 U.S. at 219 (tribe must show that statutes or regulations at issue can "fairly be interpreted as mandating compensation for damages sustained as a result of a breach of the duties they impose"); *Brown v. United States*, 86 F.3d 1554, 1563 (Fed. Cir. 1996) (" '[t]he scope and extent of the fiduciary relationship' alleged to have been breached 'is established by the regulation[s]' that control this type of leasing") (quoting *Pawnee v. United States*, 830 F.2d 187, 192 (Fed. Cir. 1987)); *id.* ("where no specific statutory requirement or regulation is alleged to have been breached by the Secretary, the money claim against the government must fail").

Thus, to sustain its action for money damages against the United States, the Tribe must show that the federal government's actions in this case breached a specific fiduciary duty as defined in a statute or regulation. In this case, the Tribe has failed to satisfy this standard and, thus, Plaintiff's claims should be dismissed.

As stated earlier, Plaintiff claims that the basis for its assertion that the United States breached its fiduciary duty to the Tribe is the Indian Long-Term Leasing Act, 25 U.S.C. §

415(a). *See* Complaint at ¶ 4. Plaintiff further elaborates on its breach of fiduciary duty claims by asserting that the United States breached this duty in four ways: 1) approving the original Land Lease; 2) declaring the original Land Lease void; 3) "threatening to once again declare the Land Lease valid, exposing the Tribe to monetary damages if the Tribe did not settle the Sun Prairie litigation;" and 4) approving the original Land Lease, which contained a waiver of the Tribe's sovereign immunity. *Id.* at ¶¶ 40-41. None of these assertions amounts to a breach of the United States' fiduciary duty owed to the Tribe under 25 U.S.C. § 415(a).

In *Brown v. United States*, 86 F.3d 1554, 1563 (Fed. Cir. 1996), the Federal Circuit concluded that the commercial leasing regime established by 25 U.S.C. § 415(a) and its implementing regulations found at 25 C.F.R. part 162, "impose upon the government a fiduciary duty in the commercial leasing context." The Federal Circuit has also stated that not each "'and every claim by the Indian lessor necessarily states a proper claim for breach of the trust.'" *Brown v. United States*, 86 F.3d at1563 (quoting *Pawnee v. United States*, 830 F.2d 187, 191 (Fed. Cir. 1987)). Here, as set forth above, Plaintiff asserts that the United States breached its fiduciary duty when it approved the original Land Lease and also when it subsequently declared the original Land Lease void. Both of these actions, however, are authorized by 25 U.S.C. § 415(a) and its implementing regulations. Moreover, with regard to the United States' authority to cancel a lease, the Federal Circuit in *Brown* noted, "the Secretary enjoys the exclusive authority to cancel commercial leases executed under section 415(a) . . ." *Brown v. United States*, 86 F.3d at 1563. The problem for Plaintiff is that it does not assert *how* carrying out these statutorily authorized actions in which the Secretary enjoys discretion constitutes a breach of a fiduciary duty owed the Tribe. Consequently, Plaintiff has failed to state a cause of action for a breach of

the United States' fiduciary duty with regard to either the approval or the subsequent cancellation of the original Land Lease.

Perhaps Plaintiff has not alleged how the approval and subsequent cancellation of the original Land Lease constitutes such a breach because to do so would conflict with the varying positions taken by the Tribe, itself, in the prior federal district court litigation. As stated earlier, a review of the positions taken by the Tribe in the South Dakota litigation reveals that Plaintiff initially sought an order from the court seeking to treat the original Land Lease as valid (*Rosebud Sioux v. Gover*, Civ. No. 99-3003 (D.S.D.)). In the next lawsuit (*Sun Prairie v. Martin*, Civ. No. 02-3030) the Tribe realigned itself as a Defendant and supported the United States' position that the Land Lease was void. Following settlement negotiations, the Tribe ultimately took the position that the original Land Lease is indeed valid, and then to presumably finalize that position, joined the United States and Sun Prairie in a Joint Motion urging the court to enter the Consent Judgment, which vacates the decision declaring the Land Lease void and confirms the validity of the original Land Lease as modified by the terms of the Consent Judgment (*see id.*, docket entry #155). In bringing its claims for a breach of fiduciary duty in this Court, however, Plaintiff cannot have it both ways -- either the original Land Lease was valid or it was void; Plaintiff cannot reasonably argue that the United States breached its fiduciary duty by both approving and then declaring the original Land Lease void. Moreover, as explained above, upon entry of the Consent Judgment by the South Dakota district court, the January 27, 1999, letter purporting to rescind the United States' approval of the original Land Lease was vacated, and the validity of the original Land Lease as modified by the terms of the Consent Judgment was confirmed. *See Sun Prairie v. Martin*, Civ. No. 02-3030, docket entry

#164 , ¶¶ 9(a) and (b).

Further, the Consent Judgment states that "[n]o other Federal, Tribal, or other legal or administrative actions challenging the rights of Sun Prairie *or the validity or terms of the Lease will be commenced by the Parties*." *Id.* at ¶ 9 (emphasis added). Therefore, because: 1) the validity of the Land Lease is an issue central to Plaintiff's breach of trust claims in this case; 2) Plaintiff has already committed to a final position on the Land Lease validity issue; and 3) the South Dakota district court has prohibited the commencement of litigation in which the validity of the Land Lease is challenged, Plaintiff should not be permitted to re-litigate the lawfulness of the Land Lease within the context of advancing its breach of trust claims before this Court.

As set forth above, Plaintiff also alleges that they United States breached its fiduciary duty owed Plaintiff by "threatening to once again declare the Land Lease valid, exposing the Tribe to monetary damages if the Tribe did not settle the Sun Prairie litigation." Complaint at ¶ 40. This allegation of a breach of fiduciary duty fails to state a claim because there is nothing in either 25 U.S.C. § 415(a) or its implementing regulations that could be reasonably interpreted to contemplate an award of money damages for "threatening" to advance a litigation position if a tribe refuses to agree to a proposed settlement. Moreover, because the Tribe was represented by competent counsel-- including the same attorney representing Plaintiff in this case-- and because the Tribe both signed the Consent Judgment and joined Sun Prairie and the United States in a Joint Motion urging the court to enter the Consent Judgment, it is disingenuous of the Tribe to now claim that the United States' conduct in the prior litigation constituted a threat to force settlement and, thus, a breach of a fiduciary duty owed Plaintiff. As a party to the Sun Prairie litigation, the Tribe, with its competent counsel at its side, exercised complete control over its

conduct in the Sun Prairie litigation; it deliberated over and ultimately made the independent decision to settle the Sun Prairie litigation. Because the decision of a litigant to settle a lawsuit is and must be wholly within the ambit of that party's control, it is illogical for Plaintiff to even suggest that the United States had a fiduciary duty to the Tribe with regard to the litigation positions it took and the settlement negotiations in which it engaged in the Sun Prairie litigation. As stated above, neither 25 U.S.C. § 415(a) nor its implementing regulations provide a statutory or regulatory basis for such a fiduciary duty; even if, however, such a statutory or regulatory provision did exist, it would not mandate compensation for a breach of fiduciary duty simply because the decision of a litigant to settle a lawsuit is the epitome of conduct that is wholly within the control of the Tribe. *See, e.g., United States v. Navajo Nation*, 537 U.S. 488 (2003).

In addition, because the Consent Judgment, which the United States signed and supported, contains lease terms more favorable to Plaintiff than were contained in the original Land Lease, it is difficult to contemplate how Plaintiff can reasonably argue that the United States breached its fiduciary duty with regard to the settlement. Accordingly, Plaintiff's claim that the United States breached its fiduciary duty by "threatening" to advance a litigation position if the Tribe refused to settle fails to state a claim for which relief can be granted.

Plaintiff's final breach of trust argument is that the United States allegedly breached its trust duty by approving a land lease containing a waiver of the Tribe's sovereign immunity. Complaint at ¶ 41. Turning to 25 U.S.C. § 415(a) and its implementing regulations, it is clear that there is no statutory or regulatory requirement to withhold approval of a land lease if it contains a waiver of the tribe's sovereign immunity. Therefore, in light of the fact that there is no statutory or regulatory requirement to withhold approval of a land lease if it contains a waiver

of the tribe's sovereign immunity, Plaintiff has failed to state a claim for a breach of the United States' trust duty on this basis as well.[8]

Finally, Plaintiff's claims for a breach of fiduciary duty must fail because the money damages it seeks to recover are not direct damages. Specifically, Plaintiff contends that it is

---

[8] While Plaintiff only cites to 25 U.S.C. § 415(a) as the statutory basis for the United States' fiduciary duty which mandates compensation to the Tribe (*see* Complaint at ¶ 4), Plaintiff also alleges that the United States' approval of the original Land Lease was made pursuant to 25 U.S.C. § 81. Complaint at ¶ 19. That statute, however, like 25 U.S.C. § 415(a), contains no provision that requires the United States to withhold approval of a lease if it contains a waiver of the Tribe's sovereign immunity. Moreover, it is interesting to note that, in 2000, Congress amended 25 U.S.C. § 81, to expressly codify what had been the industry practice and *mandate* that a lease such as the one at issue here contain a waiver of the tribe's sovereign immunity. *See* 25 U.S.C. § 81(d)(2)(C). Specifically, the amended statute reads as follows:

> (D) Unapproved agreements
> The Secretary . . . *shall refuse to approve* an agreement or contract . . . if the Secretary . . . determines that the agreement or contract --
>
> * * *
>
> (2) does not include a provision that --
>
> * * *
>
> (C) includes an express waiver of the right of the Indian tribe to assert sovereign immunity as a defense in an action brought against the Indian tribe (including a waiver that limits the nature of relief that may be provided or the jurisdiction of a court with respect to such an action).

25 U.S.C. § 81(d)(2)(C) (emphasis added). According to the legislative history, this amendment is consistent with "the overwhelming practice [] to address immunity, and often to provide some form of arbitration, a full or partial waiver of immunity, or some other recourse." S. REP. NO. 106-150, at 12 (1999). Although the revised regulations implementing 25 U.S.C. § 81, as amended, make clear that neither 25 U.S.C. § 81 nor its implementing regulations apply to a lease such as the Land Lease today (*see* 25 C.F.R. § 84.004(a)), the fact that Congress, in its 2000 amendment of 25 U.S.C. § 81, acknowledged that it was "the overwhelming practice" to include waivers of a tribe's sovereign immunity in agreements and contracts runs contrary to Plaintiff's claim that the United States' approval of the original Land Lease constituted a breach of its fiduciary duty because the Land Lease included a waiver of the Tribe's sovereign immunity.

entitled to damages in the form of litigation costs and attorneys' fees incurred in prior federal district court litigation. Complaint at ¶ 42. At best, however, such "damages" are an indirect result of the alleged breach and, therefore, are not recoverable as part of Plaintiff's breach of fiduciary duty claim.

In *Mitchell v. United States*, 229 Ct. Cl. 1, 664 F.2d 265, 273-74 (1981), this Court held that the types of damages permitted for a breach of a fiduciary duty do *not* include damages that are not a direct result of the alleged breach:

> We hold, however, that plaintiffs are not entitled to sue for other types of damages or compensation: indirect or consequential business, economic, or personal damages due to the loss (total or partial) of their property, or personal, psychological, or social harm experienced by the Indian owners or the tribe *as a consequence* of federal mismanagement of their property. These are not clearly included in the legislation plaintiffs invoke; the statutes concern property and its rightful proceeds. *The only compensation for which plaintiffs can sue in this court, under the legislation on which they rely, is direct loss* or diminution in value of their property (and its proceeds) due to mismanagement by federal officers.

*Id.* (emphasis added). Accordingly, because the alleged damages here are not included in the legislation invoked by Plaintiff and are, therefore, not direct damages, Plaintiff's claim for damages associated with the alleged breach must fail.

Moreover, in seeking to recover such damages, Plaintiff circumvents the general rule that "'in the absence of a statute directly authorizing it, courts will not give judgment against the United States for [litigation] costs and expenses.'" *Pyramid Lake Paiute Tribe of Indians v. Morton*, 499 F.2d 1095, 1096 (D.C. Cir. 1974) (quoting *United States v. Worley*, 281 U.S. 339, 334 (1930)). As stated above, neither 25 U.S.C. § 415(a), its implementing regulations, nor 25 U.S.C. § 81 provide for the recovery of litigation costs and expenses in the event the United States breaches its fiduciary duty owed a tribe. Moreover, Plaintiff cannot circumvent this well-

established rule by recasting its litigation expenses as money damages. *See, e.g., Franklin Fed. Savings Bank v. United States*, 55 Fed. Cl. 99, 108 (2003) ("The plaintiffs cannot change the essential character of their claim, which is for litigation costs incurred in their district court action, by relabeling it as a claim for the 'costs of mitigation.' The law is quite clear that statutory authorization is the sine qua non for recovery of legal costs arising from litigation against the Government."); *England v. Contel Advanced Systems*, 384 F.3d 1372, 1379 (Fed. Cir. 2004) ("[T]he character or nature of interest cannot be changed by calling it damages, loss, earned increment, just compensation, discount, offset, or penalty, or any other term, because it is still interest . . ." (quoting *Library of Congress v. Shaw*, 478 U.S. 310, 321 (1986))). Here, the only damages that Plaintiff asserts are derived from the alleged breach of trust claims are litigation costs and expenses. By characterizing these costs and expenses as "damages," however, Plaintiff cannot hide behind the fact that they are still costs and expenses related to litigation and, as such, are not recoverable absent statutory authority. Because there is no statutory authority to recover such costs and expenses and because litigation costs and expenses do not satisfy the "money damages" component of Plaintiff's breach of trust claims here, Plaintiff has failed to state a cause of action for which relief can be granted. Thus, Plaintiff's claims warrant dismissal.

## IV. CONCLUSION

WHEREFORE, based on the reasons set forth above, the United States respectfully requests that its Motion for Judgment on the Pleadings be granted, that Plaintiff's Complaint be dismissed, and that each party be directed to pay its own fees and costs.

Dated: July 21, 2006

Respectfully submitted,

s/Caroline M. Blanco
CAROLINE M. BLANCO
D.C. Bar No. 430118
Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0248
Fax: (202) 305-0267
E-mail: caroline.blanco@usdoj.gov

John Turner
Assistant Chief
U.S. Department of Justice
Environment and Natural Resources Division
Indian Resources Section
P.O. Box 44378
L'Enfant Plaza Station
Washington, DC 20026-4378
Telephone: (202) 514-9257
Fax: (202) 305-0271
E-mail: john.turner@usdoj.gov

OF COUNSEL:
Maria Wiseman
Attorney-Advisor
Branch of Trust Responsibility
Division of Indian Affairs
Office of the Solicitor, Mail Stop 6456
U.S. Department of the Interior
1849 C Street, N.W.
Washington, D.C. 20240
(202) 208-7227 Telephone
(202) 219-1791 Fax

Attorneys for Defendants