**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **ROSEBUD SIOUX TRIBE,** a federally recognized Indian Tribe, | ) | |
| **Plaintiff,** | ) | **No. 05-1023L** |
| v. | ) | Judge James F. Merow |
| **THE UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDNATS MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff, the Rosebud Sioux Tribe, a federally recognized Indian Tribe, hereby submits the following Response to the Defendant's Motion for Judgment on the Pleadings.

## I. INTRODUCTION

Before addressing the merits of Defendant's motion, the Rosebud Sioux believes it is necessary to clarify some misconceptions the Defendant seems to harbor about this case. Initially, the Defendant suggests that the "Tribe now seeks to impermissibly relitigate the validity of Land Lease within the context of its claims that the United States breached its fiduciary duties * * *." (Doc. 16 at 1.) That assertion is simply incorrect.[1] This action does not seek any relief with regard to the Land Lease itself. Instead, by this action the Rosebud Sioux seek damages

[1] While the Rosebud Sioux do not challenge the validity of the Land Lease, the Lease remains subject to challenge. It is true that Defendant noted the pendency of an action filed by the Concerned Rosebud Area Citizens, (Doc. 16 at 4), nevertheless the Defendant failed to note that the Plaintiff in that action seeks a declaration as to the validity of the Land Lease. Although the case has been pending for more than 14 months, the United States has not answered Plaintiff's complaint and the action appears to be languishing in the United States District Court for the District of South Dakota, Central Division. Given its track record, one cannot predict with any certainty whether the United States will assert that the lease is valid or void. Copies of the Complaint, Judge Robertson's Memorandum Order, and the docket sheets from the United States District court for the District of Columbia, as well as from the United States District Court for the District of South Dakota, Central Division, are attached to the Affidavit of Mark F. Marshall as Exhibits A, B, C and D, respectively.

from the United States for its conduct in approving the lease, then without notice to the parties to the Land Lease or an opportunity for those parties to be heard, declared the lease void, and thereby exposing the Rosebud Sioux Tribe to the substantial risk of a financially crippling judgment. If that was not enough, the United States then changed its mind yet another time, concluding the Land Lease was again valid. Moreover, this claim should come as no surprise to the United States because in the process of negotiating the Consent Judgment the Rosebud Sioux reserved the right to bring this action by insisting that a release of claims against the United States be removed from the Consent Judgment.

The Defendant also suggests that "Plaintiff's claims suffer from jurisdictional infirmities because they are barred by the applicable statute of limitations * * *." (Doc. 16 at 2.) In fact, the United States has couched all of the allegations in motion as "jurisdictional." This Court has noted that it may be necessary to consider the label placed on a motion such as this before addressing the merits of such a motion by posing and answering the following question: "[E]ven if the time bar restricting the exercise of this Court's jurisdiction over a claim is 'jurisdictional in nature' does this mean that the statute of limitations deprives our Court of *subject matter* jurisdiction? The Court concludes that the best understanding of the relevant case law is that it does not * * *." *Bolduc v. United States*, ___ Fed.Cl. ___, ___, 2006 WL 2052347 (July 25, 2006) (Citation omitted; emphasis supplied.)

This Court further noted that the "Federal Circuit has, on several occasions, expressly gone out of its way to emphasize that the running of the statute of limitations is properly a failure to state a claim upon which relief may be granted, and not a lack of subject-matter jurisdiction." *Id.*, at ___ (Citing *Venture Coal Sales Co. v. United States,* 370 F.3d 1102, 1105, n.2 (Fed.Cir. 2004); *Ariadne Fin. Services Pty. Ltd. v. United States,* 133 F.3d 874, 878 (Fed.Cir. 1998);

*Borough of Alpine*, 923 F.2d 170, 171-172 & n. 1 (Fed.Cir. 1991); *Grass Valley Terrace v. United States,* 69 Fed.Cl. 341, 345-348 (2005). "The label under which a dismissal motion is considered can be significant to the outcome of that motion as plaintiffs have the burden of demonstrating subject-matter jurisdiction, *see Reynolds v. Army & Air Force Exchange Service,* 846 F.2d 746, 747-48 (Fed. Cir. 1988), while the defendant "has the burden where a motion for failure to state a claim is filed." *Bolduc v. United States,* ___ Fed.Cl. ___ quoting *Grass Valley Terrace v. United States,* 69 Fed.Cl. 341, 345 (2005) (citing *Conti v. United States,* 291 F.3d 1334, 1338 (Fed.Cir. 2002)).

## II. ARUGEMENT AND AUTHORITY

### A. Standard of Review.

"The legal standard applied to evaluate a motion for judgment on the pleadings is the same as that for a motion to dismiss." *Peterson v. United States,* 68 Fed.Cl. 773, 776 (2005). In considering a motion to dismiss, the Court "must accept as true all of Plaintiff's well-pleaded fact alleged in the complaint and draw all reasonable inferences in the Plaintiffs' favor." *Id.,* 68 Fed.Cl. at 775 citing *Godwin v. United States,* 338 F.3d 1374, 1377 (Fed.Cir. 2003); *Boyle v. United States,* 200 F.3d 1369, 1372 (Fed. Cir. 2000); *Perez v. United States,* 156 F.3d 1366, 1370 (Fed.Cir. 1998); *Scheuer v. Rhodes,* 417 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). This Court should not dismiss a complaint for failure to state a claim "unless it appeals beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.,* quoting *Scheuer v. Rhodes,* 416 U.S. at 236-237; 94 S.Ct. 1683 (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Moreover, "a strong public policy in federal courts exists in favor of ensuring a litigant a complete and fair hearing on the merits of a claim." *J. M. Huber Corp. v. United States,* 27

Fed.Cl. 659, 662 (1993) citing *Greenberg v. FDA.* 803 F.2d 1213, 1216 (D.C.Cir. 1986). "Since summary disposal of cases is in opposition to this policy, a strict standard is generally applied in ruling on Rule 12(c) motions." *Id.*, citing *Roemhild v. Jones,* 239 F.2d 492, 494 (8th Cir. 1957).

**B. <u>The United States assumed a fiduciary duty to the Rosebud Sioux with regard to the Land Lease</u>.**

In *Brown v. United States*, 86 F.3d 1554 (Fed. Cir. 1996), the Court determined that the proper test of whether the United States has assumed fiduciary duties in the commercial leasing of lands under 25 U.S.C. 415(a) and/or 25 C.F.R. part 162 is whether the Secretary of the Interior, rather than the allottees, has control or supervision over the leasing program. *Id.*, 86 F.3d at 1561. The Court concluded that the commercial leasing program imposes "an enforceable fiduciary duty on the government under the 'control' portion of *Mitchell II's* 'control or supervision' test." *Id.* The commercial leasing program at issue is the same as the law under which the Secretary approved the lease giving rise to the Rosebud Sioux's claim in this case.

The Circuit Court reasoned as follows to reach that conclusion:

> It is plain that the allottees do not control the leasing of their lands. First, they can only grant those leases which the Secretary approves. 25 U.S.C. § 415(a); *Sangre De Cristo Dev. Co. v. United States,* 932 F.2d 891, 894 (10th Cir. 1991) ("In order for the [section 415 (a)] lease to have been valid, the [Interior] Department's approval was required.") (citing terms of section 415 (a)); Second, they can grant leases only on terms and forms that the Secretary dictates. 25 U.S.C. § 415(a); 25 C.F.R. 162.5(a) ("All leases made pursuant to the regulations in this part shall be in the form approved by the Secretary . . . ."). Third, an allottee cannot cancel a lease without the Secretary's prior approval under 25 C.F.R. § 162.14. *Yavapai-Prescott Indian Tribe v. Watt,* 707 F.2d 1072, 1073, 1074 n.4 (9th Cir.), *cert. denied,* 464 U.S. 1017, 104 S.Ct. 548, 78 L.Ed.2d 723 (1983). Fourth, the Secretary can cancel a lease without the allottee-lessor's consent. 25 C.F.R. § 162.14.
>
> These features of section 415(a) leases must, of course, be understood against the backdrop created by 25 U.S.C. § 177, the most general prohibition on conveyances of interest in Indian lands, and the express provision of the General Allotment Act, 25

> U.S.C. § 348, that "if any conveyance shall be made of lands set apart and allotted as herein provided, or any contract made touching the same, . . . such conveyance shall be absolutely null and void." As a consequence of sections 177, 348, and 415(a), the allottees must chose either (a) to lease at the pleasure of the Secretary, according to the regulations, and on his or her terms, or (b) not to lease at all. Dispossessed of the (sic) all the conventional incidents of ownership touching the power to lease their land, the allottees thus retain nothing more than the power of a beneficiary under trustee's control. Such control over the entry into, terms of, and exit from leasing as the Secretary retains by virtue of section 415(a) and part 162, understood against the backdrop of section 348, **is all that is required to create enforceable duties under the "control" portion of the test established by *Mitchell II.***

*Brown v. United States*, 86 F.3d at 1561-1562 (Footnotes omitted; emphasis added). The Rosebud Sioux believe that *Brown* unequivocally establishes that the United States has an enforceable duty to it concerning the Land Lease, and that the breach of that duty gives rise to a compensable claim in this Court. Thus, it is clear that this Court enjoys subject matter jurisdiction with regard to the Rosebud Sioux's claim. Therefore, the United States' motion for judgment on the pleadings must be denied.

Here the Secretary approved the Land Lease, including a complete waiver of tribal sovereign immunity, and shortly after approving the lease, without notice or an opportunity to be heard, declared its "approval of the Land Lease [was] and always has been void for failure to fully comply with NEPA." A copy of Assistant Secretary Gover's letter of January 27, 1999, is attached to the Affidavit of Mark F. Marshall as Exhibit E. With the adoption of the Consent Judgment, the Secretary once again changed his mind and concluded that the Land Lease was valid. A copy of the Consent Judgment is attached to the Affidavit of Mark F. Marshall as Exhibit F. As the United States has not answered the Concerned Rosebud Area Citizens case pending before the United States District Court for the District of South Dakota, Northern Division it is unknown whether the United States will once again change its mind and conclude

that the Land Lease is "void."

## C. Accrual of the Rosebud Sioux's Claim against the United States

### 1. The Rosebud Sioux's Claim Accrued when the Consent Judgment was Approved.

In general "a claim accrues 'as soon as all events have occurred that are necessary to enable the plaintiff to bring suit.'" *Bolduc v. United States,* ___ Fed.Cl. at ___ quoting *Martinez v. United States,* 333 F.3d 1295, 1303 (Fed.Cir. 2003). In this case, the date on which all events occurred that were necessary for the Rosebud Sioux to bring suit was May 19, 2005, the date on which United States Senior District Judge Richard H. Battey signed the order approving the Consent Judgment.

In *Mitchell v. United States,* 13 Ct.Cl. 474 (1987) (Subsequent history omitted) the United States Court of Claims considered the issue of when a claim against the United States accrues for a breach of fiduciary duties with regard to management of trust assets. The Plaintiff alleged that the United States' conduct led to an improvident settlement of a law suit. *Id.* 13 Ct.Cl. at 483-84. The Court noted that "[a]ll events that give rise to the claim obviously could not have occurred until the settlement occurred. Since the settlement took place within six years of the filing of this suit, the claim is not time barred."

The same is true in this case. The Rosebud Sioux contend, and it is undisputed, that the United States voided the Land Lease without notice to any party to the agreement. That mismanagement of the Rosebud Sioux's resources gave rise to the *Sun Prairie* litigation in South Dakota that was ultimately resolved by the Consent Judgment. The Rosebud Sioux contend that the United States' mismanagement of their resources was tied to the resolution of that litigation and that as in *Mitchell v. United States*, all events that give rise to the claim could not have occurred until the settlement occurred. Indeed, until the *Sun Prairie* litigation was concluded

one did not know with any certainty whether the United States would contend that the Land Lease was valid or void. Thus, this action is timely, and the United States' motion for judgment on the pleadings must be denied.

The Rosebud Sioux's contention with regard to the accrual of the statute of limitations is consistent with the well-recognized rule that statute of limitations does not accrue until the claimant has suffered ascertainable damages. In *Terteling v. United States*, the Court observed:

> It is too well established to require citation of authority that a claim does not accrue until the claimant has suffered damages. At the time the work was completed and payment made, plaintiffs did not have a claim against the United States, for at that point plaintiffs had not suffered any damages. Plaintiffs' claim in this case did not arise until suit was filed against them in the Idaho Court. It was then and only then that litigation expenses began. Had the expenses concluded at that point, we would say that suit must be filed within six years of that date. *See Griffin v. United States*, 77 F.Supp. 197, 110 Ct.Cl. 330, 372 (1948). However, it was impossible for the contractors at that time to set up a claim. It was only when the litigation ended that the contractors could determine the total amount of the litigation expenses and the termination of the litigation was not until the Supreme Court denied certiorari in *Ringele v. Terteling*, 353 U.S. 988, 77 S.Ct. 1284, 1 L.Ed.2d 1142, on June 3, 1957, which was less than six years prior to the filing of the petition herein.

334 F.2d 250, 254, 167 Ct.Cl. 331 (1964). *See also, Shermco Industries, Inc. v. United States*, 6 Ct.Cl. 588, 591 (1984).

2. <u>Alternatively, this Action May have Accrued on June 5, 2003, when Judge Battey Determined that the Lease was Valid.</u>

In the course of the Sun Prairie action the Federal Defendants as well as the Rosebud Sioux moved to dismiss Sun Prairie's complaint. In its Memorandum Opinion Regarding Motions to Dismiss, a copy of which is attached to the Affidavit of Mark F. Marshall as Exhibit G, the district court observed that:

> While plaintiff's claims presume the validity of the lease, defendant's motions to dismiss have currency only if the Court

> presumes the lease is "void." Thus the defendants' motions and argument place before the Court a threshold question of whether the lease is or is not void. If the lease is indeed void, then plaintiff's cannot count upon the lease's waivers and jurisdictional provisions in opposing defendants' motions; if the lease is not void, defendants' motions respecting jurisdiction, sovereign immunity, and exhaustion are without merit.

(Id., Ex. G at 8.)

The district court then reviewed the Land Lease and the applicable regulations as well as the responses of counsel to the Court's inquiries during oral argument and concluded:

> Thus, rather than unilaterally terminating a lease, federal regulations required the secretary to provide notice to Sun Prairie, [and presumably the Rosebud Sioux] and an opportunity for Sun Prairie to cure the environmental compliance issues, which the federal defendants admit were curable. While it may have been expedient for the government to terminate the lease to settle a lawsuit with intervenors, plaintiff's rights [and presumably the rights of the Rosebud Sioux] were a casualty of that expediency. The secretary's lease termination did not comply with applicable federal due process regulations. The lease, accordingly, is valid, and its terms control the Court's analysis of the pending motions to dismiss.

(Affidavit of Mark F. Marshall, Ex. G at 9.) Until the district court opined that the Land Lease was valid, the Rosebud Sioux had received mixed signals from its trustee as to the validity of the Land Lease. The Secretary approved the Land Lease on September 16, 1998, and then the Secretary, without either notice or an opportunity to be heard, declared that the Land Lease was void on January 27, 1999. June 5, 2003, the date of the district court's Memorandum Opinion Regarding Motions to Dismiss, provides an alternative date of accrual for the Rosebud Sioux's claim. If June 5, 2003, marks the date of accrual this action is timely.

3. <u>This Action did not Accrue when the Land Lease was Approved on September 16, 1998.</u>

There are a variety of dates on which the period of limitations in this action may have accrued. However, only a date before September 23, 1999, that is six years before the date

on which this action was commenced would result in this case being time barred. The United States suggests that this action accrued on September 16, 1998, the date on which the United States initially approved the Land Lease is. As of that date, the United States may have breached its fiduciary duty by approving a lease that contained a complete waiver of the Rosebud Sioux's sovereign immunity, but the Tribe was not aware of significance of that act until months, if not years later and had suffered no damage result of that conduct until forced to defend itself against the action brought against the Rosebud Sioux by Sun Prairie. Thus, there is no reasonable basis on which to contend that the Rosebud Sioux's claim accrued on September 16, 1998.

4. This Action did not Accrue on January 27, 1999, the date of Gover Letter.

As of the date of the Gover letter, the Rosebud Sioux had suffered no damage as a result of the United States' breach of its fiduciary duties and thus the Rosebud Sioux contend that its claim against the United States did not accrue as of that date. If the Court concludes otherwise, this action is nonetheless timely based upon the doctrine of equitable tolling.

Beginning with the Supreme Court's decision in *Irwin v. Dept. of Veterans Affairs,* 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.21d 435 (1990), it has been clearly established that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." *Id.,* 498 U.S. at 95-96. The United States Supreme Court more recently elaborated on the doctrine of equitable tolling, explaining that "a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." *Pace v. DiGuglielmo,* 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005) (citing *Irwin,* 498 U.S. at 96.)

Moreover, "[t]he question of exactly when an alleged wrongdoing was or should have

been discovered, for purposes of deciding when the statute of limitations began to run is a question of fact, and can only be decided on a summary judgment motion when the evidence irrefutably demonstrates that plaintiffs should have discovered the wrongdoing." *Travelers Indem. Co. v. United States*, 16 Cl.Ct. 142, 157 (Cl.Ct. 1988) citing *Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873 (9th Cir.1984). If it is inappropriate to decide a statute of limitations question on summary judgment because of the presence of a question of fact, it is likewise improper to decide such an issue in a motion for judgment on the pleadings.

Within days of the date of the Gover letter, the Rosebud Sioux were in court attempting to protect their rights. That action is described in Sun Prairie's Complaint against the Rosebud Sioux, a copy of which is attached to the Affidavit of Mark F. Marshall as Exhibit H, as follows:

> Sun Prairie and the Tribe jointly filed a Verified Complaint against the Federal Defendants in the District Court of South Dakota (the "South Dakota Lawsuit") on February 3, 1999, and Sun Prairie secured, after a full evidentiary hearing, a permanent injunction prohibiting the Federal Defendant and the Intervenors from interfering with the hog farm construction and operation. See Rosebud Sioux Tribe et al. v. Gover, et al., Case No. CIV. 99-3003 (February 3, 2000 Order). No party sought a stay of the permanent injunction. The Federal Defendants and the Intervenors appealed the Court's permanent injunction decision to the United States Court of Appeals for the Eighth Circuit. No party sought a stay pending appeal.

(Affidavit of Mark F. Marshall, Ex. H, ¶ 23.)

The Eighth Circuit Court of Appeals subsequently reversed the decision to grant the permanent injunction in an opinion dated April 2, 2002. See *Rosebud Sioux Tribe v. McDivitt*, 286 F.3d 1031 (8th Cir. 2002). The Eighth Circuit Court of Appeals concluded that Sun Prairie lacked standing to challenge the United States' decision to declare the Land Lease void without notice and an opportunity to be heard. *Id.*, 286 F.3d at 1037-1040. The date on which the Eighth Circuit reversed the permanent injunction may be another appropriate date to mark the accrual of

the Rosebud Sioux's claim against the United States; however, as of that date it appears that the United States still maintained that the Land Lease was void. If the date of the Eighth Circuit's opinion marks the date of accrual, this action is timely.

The Rosebud Sioux concede, as they must, that the Tribe has not maintained an entirely consistent position with regard to the hog farms. Indeed, the project remains contentious, and the vote by the Rosebud Sioux Tribal Council to approve the Consent Judgment was close. As Sun Prairie alleged in its Complaint against the Rosebud Sioux:

> As a result of a tribal election in October 1999 that changed the membership of the Rosebud Sioux Tribal Council and brought President Kindle into power, the Tribe moved to realign from a plaintiff to a defendant in the South Dakota Lawsuit while the permanent injunction was on appeal. The Rosebud Sioux Tribal Council resolution authorizing this request, which was submitted to the Eighth Circuit Court of Appeals with the motion, expressly confirmed the Tribe's wish to "realign itself *as a defendant/appellant.*" (emphasis added). The Court of Appeals granted that motion on August 28, 2000.

(Affidavit of Mark F. Marshall, Ex. H, ¶ 25.) The date on which the Eighth Circuit granted the motion to realign, August 28, 2000, may be yet another appropriate date on which to mark the accrual of the Rosebud Sioux claim. If the date of the Eighth Circuit's order marks the date of accrual, this action is timely.

## D. <u>**The Rosebud Sioux Complaint is not barred by the Doctrine of Laches.**</u>

The Federal Circuit Court of Appeals explained the doctrine of laches in *Cornetta v. United States*, 851 F.2d 1372 (Fed.Cir. 1988). The Court observed that the doctrine of laches "is based upon grounds of public policy, which require for the peace of society the discouragement of stale claims." *Id.*, 851 F.2d at 1376 quoting *Mackall v. Casilear*, 137 U.S. 556, 566, 11 S.Ct. 178, 181, 34 L.Ed. 776 (1890). The Court emphasized that laches has two elements: unreasonable and unexcused delay by the claimant, and prejudice to the government. *Cornetta,*

851 F.2d at 1378. Because laches is an affirmative defense, the burden of proving it lies with the government. *Id.*, at 1380. Moreover, the Court found that the claimant's delay of nearly seven years before filing suit was not presumptively prejudicial to the United States. *Id.*

The United States Claims Court has interpreted *Cornetta* as follows:

> As a result of *Cornetta,* the government must now show that the claimant's unreasonable delay has resulted in undue prejudice to the government, either "defense prejudice" or "economic prejudice." "Defense prejudice" can be established by showing loss of records, destruction of evidence, fading memories or unavailable witnesses. "Economic prejudice" focuses on monetary consequences to the government if the claimant prevails.

*Mai v. United States,* 22 Ct.Cl. 664, 670 (1991) citing *Cornetta,* 851 F.2d at 1378.

The United States' discussion of laches rings hollow for a variety of reasons. First, as demonstrated above, this action is timely. Second, the discussion of laches over looks the United States' own conduct in which it first approved the Land Lease, and then declared it void without any notice or opportunity to be heard. The United States persisted in its view that the Land Lease was "void" until at least June 5, 2003, when Judge Battey filed his Memorandum Opinion Regarding Motions to Dismiss. After Judge Battey filed his Memorandum Opinion the United States filed 10 motions for extensions of time within which to answer Sun Prairie's complaint, extending the due date for the United States' answer until August 13, 2004. Copies of the Federal Defendant's Motion for Tenth Extension of Time to Answer Complaint, and the District Court's Order granting that motion are attached to the Affidavit of Mark F. Marshall as Exhibits I and J, respectively.

Furthermore, any suggestion that the United States was not aware that the Rosebud Sioux contemplated asserting a claim for breach of fiduciary is simply unfounded. During the negotiation of the Memorandum of Understanding that led to the Consent Judgment, as well as the negotiation of the Consent Judgment itself, one topic of negotiation concerned a purported

waiver by the Rosebud Sioux of any claim against the United States. Eventually, the Rosebud Sioux and the United States agreed that the so-called waiver language would be removed from the settlement documents. A copy of an e-mail from counsel for the Rosebud Sioux to counsel for the Federal Defendants confirming that agreement is attached to the Affidavit of Mark F. Marshall as Exhibit K.

Additionally, the United States has made no effort to show "defense prejudice" by showing any loss of records, destruction of evidence, fading memories or unavailable witnesses. Indeed, it is difficult to imagine how such a showing could be made in a motion for judgment on the pleadings where matters outside the complaint are not usually considered.

The United States' suggestion that Sun Prairie will be prejudiced if the Rosebud Sioux are allowed to proceed with this action is simply a mystery. Nothing in the action will disturb the Consent Decree; the Rosebud Sioux do not challenge the validity of the Land Lease, as modified by the Consent Decree, nor do the Rosebud Sioux challenge any other portion of the Consent Decree. If the United States is genuinely interested in sustaining the validity of the Consent Decree, it seems that it would be more aggressive in the defense of the *Concerned Rosebud Area Citizens v. Norton* matter now pending in the United States District Court for the Central Division of South Dakota. As showing by the docket sheet, a copy of which is attached to the Affidavit of Mark F. Marshall as Exhibit D, there has been no substantive action in that case since it was transferred to South Dakota from United States District Court for the District of Columbia.

E. **<u>This Action is not an Attack on the Consent Judgment.</u>**

The Rosebud Sioux's action in this court does is not an attack on the Consent Judgment, nor is it an effort to relitigate the terms of the Consent Judgment. Instead, as the complaint clearly reflects, this is an action to recover damages from the United States for the breach of its fiduciary duty owed to the Rosebud Sioux. The monetary relief that the Rosebud Sioux seeks from the United States is a claim that the Tribe could not pursue in United States district court, because that court truly lacks the jurisdiction necessary to award the relief sought. Thus, the only avenue open to the Rosebud Sioux was to settle the claim asserted but Sun Prairie and seek recovery from the United States in this forum.

The United States suggests that "the South Dakota district court explicitly retained jurisdiction for enforcement of the Consent Judgment to 'protect its proceedings and vindicate its authority.'" (Doc. 16 at 15 (Citation omitted.)) Allowing this action to proceed is entirely consistent with those objectives. This action is outside of the Consent Decree, as noted above, because the United States District Court for the District of South Dakota does not have the jurisdiction to award monetary damages against the United States under these circumstances. An action to recover damages from the United States for the breach of its trust responsibilities does not impinge on the authority of the United States District Court for the District of South Dakota.

The United States suggests that "[s]ettlement through a consent decree or judgment allows both parties to agree on 'precise terms' after 'careful negotiation.' In return for this benefit, the parties, 'each give up something they might have won had they proceeded with litigation.'" (Doc. 16 at 15 (Citation omitted.)) The problem with the United States' argument is that the Rosebud Sioux could not have won a money judgment against the United States through the action in South Dakota. Thus, the United States' authority is completely inapposite.

The United States suggests that the Rosebud Sioux were not "coerced into settling." (Doc. 16 at 16.) In making that suggestion the United States overlooks the allegations of the Plaintiff's Complaint. In particular the Rosebud Sioux have alleged that "[o]n February 22, 2005, the Tribe held a Tribal Council meeting at which Assistant Attorney General Thomas Sansonetti, appeared by telephone. During the telephone conference the Assistant Attorney General advised the Tribe that the United States would not resist Sun Prairie's motion for summary judgment and in effect, 'confess judgment' if the Tribe did not settle the case." (Doc. 1 at ¶ 38.) If the United States "confessed judgment" as Assistant Attorney General Sansonetti suggested, the Rosebud Sioux faced millions of dollars of potential liability based on the United States unilateral decision to declare the Land Lease void. The basis of the liability included the lost profits from the other 11 farms that had not been constructed.

In summary, this action is not a collateral attack on the Consent Judgment. It is, instead, nothing more or less than what it purports to be, that is an action against the United States for breach of its trust responsibility to the Rosebud Sioux.

**F. <u>The Rosebud Sioux have been damaged as a result Of the United States' Breach of its Fiduciary Duties.</u>**

The Rosebud Sioux have discussed the legal basis for their claim in section II B, *supra,* and will not repeat that discussion here other than to note that the Tribe's claim is clearly within the holding of *Brown v. United States*, 86 F.3d 1561-62.

The United States contends that this action must be dismissed for failure to state claim because the Rosebud Sioux seek only litigation costs and expenses related to defending the action brought against the Tribe by Sun Prairie. (Doc. 16 at 26-28.) It seems as if the United States failed to read the Rosebud Sioux's complaint. The complaint alleges that "[a]s a result of the Defendants' breach of their fiduciary duty the Tribe has suffered damages including but not

limited to the cost and expense of defending litigation related to the Defendants' Lead Lease approvals." (Doc. 1 at ¶ 42.)

At this point in the litigation the United States has not undertaken any discovery to determine the full extent of the Rosebud Sioux's damage claim. One potential element of damages, in addition to the costs and expenses of litigation, which are indeed a direct result of the United States' breach of its trust duties, is the diminution in value of the two farm sites on which the hog farms are located. The United States, in its capacity as trustee approved the Land Lease without any bonding provision for the damage that may be done to the land as a result of the hog farms. A bond would have protected the Rosebud Sioux from the risk of receiving land contaminated by the accumulation of years and years of hog manure. Thus, the Rosebud Sioux clearly have potential damages for which the United States is liable.

## III. CONCLUSION

Ralph Waldo Emerson once observed that "[a] foolish consistency is the hobgoblin of little minds, adored by little statesmen and philosophers and divines." Nevertheless, consistency hopefully wise and not foolish in the administration of trust assets is a goal to which the United States should aspire. Here, the schizophrenic behavior exhibited by the United States in this matter is hardly the conduct one would expect from a fiduciary charged with the duty to administer Rosebud Sioux trust lands. The manner in which the United States has attended to its fiduciary duties violates its trust responsibilities to the Rosebud Sioux as defined by *Brown v. United States*, 86 F.3d 1561-62. For that reason, as well as the other reasons expressed in this brief, the Rosebud Sioux respectfully request that the Court deny the United States' Motion for Judgment on the Pleadings.

Dated at Sioux Falls, South Dakota, this 8th day of September, 2006.

DAVENPORT, EVANS, HURWITZ &
SMITH, L.L.P.

Mark F. Marshall
206 W. 14th Street
P. O. Box 1030
Sioux Falls, SD 57101-1030
Telephone: (605) 336-2880
Facsimile: (605) 335-3639
Attorneys for Plaintiff Rosebud Sioux Tribe