# EXHIBIT G

FILED
JUN 05 2003
CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| SUN PRAIRIE, a partnership; and BELL FARMS, LLP, a Nebraska Limited Liability Partnership,<br><br>Plaintiffs,<br><br>vs.<br><br>AURENE MARTIN, Assistant Secretary - Indian Affairs, Department of the Interior, in his official capacity; GAIL NORTON, Secretary of the Department of Interior, in her official capacity; and ROSEBUD SIOUX TRIBE, a federally recognized Indian Tribe,<br><br>Defendants. | CIV. 02-3030 RHB<br><br>MEMORANDUM OPINION REGARDING MOTIONS TO DISMISS |

Pending are motions to dismiss filed by defendants Neal McCaleb and Gail Norton (federal defendants) and Rosebud Sioux Tribe. This case arises from the actions of the then Assistant Secretary for Indian Affairs, Department of the Interior, Kevin Gover (secretary), terminating a land lease agreement between plaintiff Sun Prairie and defendant Rosebud Sioux Tribe. Aurene Martin, the current Assistant Secretary for Indian Affairs, is substituted in the caption for Gover pursuant to Fed. R. Civ. P. 25(d)(1). At issue in the case is the constitutionality of the secretary's lease termination, and the disposition of remedies plaintiffs seek as a result of events that followed the secretary's action.

## FACTS

In the spring of 1998, the Rosebud Sioux Tribe (tribe) and Sun Prairie agreed to negotiate a land lease for the development of a multi-site hog production facility on tribal trust land in Mellette County, South Dakota. A public informational meeting regarding the project was held in Norris, South Dakota, on June 15, 1998. The Bureau of Indian Affairs (BIA) office in South Dakota contracted with RESPEC of Rapid City, South Dakota, to prepare a draft environmental assessment

7

(EA) for the project. The draft EA was released in late June of 1998. The comment period on the EA expired on July 29, 1998. Based on the final EA, released August 14, 1998, BIA Rosebud Agency Superintendent Larry Burr issued a Finding of No Significant Impact (FONSI) that same day and notice of the FONSI was published in local newspapers of general circulation the following week.

On August 19, 1998, the Rosebud Sioux Tribal Council adopted Tribal Resolution # 98-203, which authorized the execution of the lease for the project. The lease between the tribe and Sun Prairie was executed on September 9, 1998. On September 16, 1998, Cora Jones, Aberdeen Area Director for the BIA, approved the lease pursuant to 25 U.S.C. §§ 81 and 415, and 25 C.F.R. § 162.5 (1998).[1] The lease was recorded with the BIA Aberdeen Area Land Title and Records Office on September 17, 1998. On or about September 21, 1998, construction commenced on Site 1 of Phase I of the project. The project consists of two phases. Phase I involves construction of three finishing sites to be used to fatten hogs for market. Phase II involves construction of five sow sites and five additional finishing sites. As of February 18, 1999, the tribe, to some extent, and Sun Prairie to a great extent, had expended approximately $5,000,000 on construction for Site 1.[2]

Letters from various parties concerned about the project were sent to Area Director Jones, Assistant Secretary Gover, and others during the month of September of 1998, but no administrative appeal of the lease approval was ever filed. No letter of protest even referred to the lease. Comments from the Environmental Protection Agency on the draft EA were not received until September 1, 1998, even though a copy of the draft EA was received by the EPA during the first or second week of July. The EPA had an opportunity to timely respond but did not do so. Additional

---

[1] 25 U.S.C. § 1a permits the Secretary of the Interior to delegate authority to subordinate officers. In this case, the authority to approve a lease under 25 U.S.C. § 415 is delegated to the BIA's Area Offices.

[2] Plaintiffs' complaint notes that approximately $10 million dollars were expended in the construction of Site 1. Sun Prairie has secured approximately $40 million dollars in outstanding financing for the project and alleges it is at risk of default on the $40 million dollars due to the actions complained of in this case. COMPLAINT at ¶¶ 24, 44, 45. Briefing filed in the appeal indicates that the total project is expected to amount to an investment of $100 million dollars.

EPA comments on the project were received on October 15, 1998, after the lease had already been approved. Local BIA officials met with EPA staff on at least four different occasions between September of 1998 and January of 1999 to address the concerns the EPA had with the project.

On November 23, 1998, organizations known as Concerned Rosebud Area Citizens, South Dakota Peace and Justice Center, Prairie Hills Audubon Society, and Humane Farming Association sued the federal government in the United States District Court for the District of Columbia, seeking to suspend or enjoin the BIA's approval of the lease and alleging violations of the National Environmental Policy Act (NEPA) and the National Historic Preservation Act (NHPA). Concerned Rosebud Area Citizens v. Babbitt, 34 F. Supp. 2d 775 (D.D.C. 1999). The administrative record relating to the project EA and FONSI was received by the Department of Justice on January 25, 1999. On January 27, 1999, one day after the government filed its answer in the D.C. litigation denying any violations of NEPA or NHPA in connection with the project, Assistant Secretary Gover sent a letter to the tribe stating that the BIA's approval of the lease for the project was void for failing to fully comply with NEPA. The parties to the D.C. litigation then entered into a joint stipulation of dismissal on January 28, 1999, which cited Gover's letter voiding the lease approval, and the court dismissed the case without prejudice.[3]

On February 3, 1999, the tribe and Sun Prairie initiated an action in the United States District Court, District of South Dakota, Central Division, challenging Gover's authority and decision to void the lease, and seeking a declaration that the EA prepared for the project complied with NEPA. The court entered a permanent injunction enjoining the government and the plaintiffs in the D.C. litigation from taking any action that would interfere with the construction of the project. While the district court's decision was on appeal, general tribal elections altered the membership and political posture

[3] On May 9, 2003, this Court held a non-evidentiary hearing on the pending motions to dismiss for purposes of hearing argument only. The foregoing facts are derived from the Central Division District Court's opinion, which facts are not disputed by the parties.

of the tribal council. The reconstituted tribal council was comprised of members opposed to Sun Prairie's project and the prior council's approval of the subject lease. The tribal council resolved to support the secretary's lease rescission and obtained approval from the appellate court to realign itself with the appellants.

On appeal, Sun Prairie, now divorced from the tribe, maintained that the secretary's determination to void the lease was made in violation of: (1) 25 U.S.C. §§ 1a, 81, and 415; (2) NEPA, and its enabling regulations, 40 C.F.R. §§ 1500-1508; and (3) the National Historic Preservation Act, 16 U.S.C. §§ 470-470x-6. Sun Prairie asserted no constitutional claims in the district court proceedings, or on appeal. The appellate court did not reach the merits of any of Sun Prairie's claims.[4] The appeal was resolved when the appellate court determined that Sun Prairie lacked prudential standing to challenge the secretary's actions under any of the statutes. In particular, with respect to Sun Prairie's claims under 25 U.S.C. §§ 1a, 81, and 415, the appellate court noted that those statutory provisions govern "the relationship between Indian tribes and the federal government." Rosebud Sioux Tribe v. McDivitt, 286 F.3d 1031, 1036 (8th Cir. 2002). Accordingly, the appellate court determined that:

> Because the statutes . . . were enacted to protect Indian interests, we believe it would be inconsistent to interpret them as giving legally enforceable rights to non-tribal or non-governmental parties whose interests conflict with the tribe's interests. Sun Prairie's asserted interests, while considerable, are not arguably within the zone of interests to be protected or regulated by the Indian statutes.

Rosebud Sioux Tribe, 286 F.3d at 1037. Sun Prairie commenced the subject lawsuit August 14, 2002, alleging various claims for equitable and declaratory relief dispersed over 14 counts. Sun Prairie's complaint consists of a redundant, "kitchen-sink" set of theories that, reduced to the essence of its primary theory, is a declaratory and equitable claim for the unconstitutional taking of its lease rights

---

[4] Sun Prairie's constitutional claims in this case are not connected either to NEPA or the National Historic Preservation Act. Accordingly, the Court will discuss the appellate court's ruling only insofar as it addresses the statutory and regulatory basis for Sun Prairie's constitutional claims, i.e. 25 U.S.C. §§ 1a, 81, and 415, and 25 C.F.R. § 162.14.

by the secretary without due process of law, and claims against the tribe for breach of the lease agreement.

Defendants filed motions to dismiss. The federal defendants seek dismissal on the grounds of federal sovereign immunity and lack of subject matter jurisdiction. The tribe's motion also questions subject matter jurisdiction, and raises exhaustion of tribal remedies, tribal sovereign immunity, claim splitting, failure to join the United States as an indispensable party, and tribal statute of limitations. Intervenors join in the defendants' motions. Defendants' points of contention are discussed serially below.

**DISCUSSION**

**A. Standard of Review**

Both the tribe and federal defendants challenge the Court's subject matter jurisdiction over the pending case. Precedent within this circuit establishes the standard of review applicable to a jurisdictional challenge as follows:

> A court deciding a motion under Rule 12(b)(1) must distinguish between a "facial attack" and a "factual attack." In the first instance, the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6). The general rule is that a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of Rule 12(b)(6) safeguards.

Osborn v. United States, 918 F.2d 724 (8th Cir. 1990). Stated another way:

> In order to properly dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments. In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction . . . . If [a defendant] wants to make a factual attack on the jurisdictional allegations of the complaint, the court may receive competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute. The proper course is for the defendant to request an evidentiary hearing on the issue.

Titus v. Sullivan, 4 F.3d 590 (8th Cir. 1993). During the hearing on the motion, the tribe explicitly acknowledges that its challenge is facial. TRANSCRIPT at 5. The federal defendants did not specifically state whether their jurisdictional challenge is facial or factual, but having not requested an evidentiary hearing, and having raised no factual issues, the Court presumes the federal defendants' jurisdictional challenge is also facial. Whether the defendants' jurisdictional challenge is facial or factual is somewhat academic in light of the fact that the controlling material fact of this case in the Court's view, i.e., the fact that the secretary did not revoke the lease pursuant to any recognized statutory, regulatory, or judicial procedural mechanism, is undisputed. Thus, irrespective of whether the jurisdictional challenge is facial or factual, the result of the Court's ruling is the same under either standard of review.

With respect to the remaining, non-jurisdictional issues, the Court has of necessity consulted documents outside of the pleadings, in particular the subject lease agreement. Fed. R. Civ. P. 12 requires that the summary judgment standards of Fed. R. Civ. P. 56 be applied to motions to dismiss under Fed. R. Civ. P. 12(b)(6) when a court considers matters outside the pleadings. Again, because the controlling material fact in this case is not disputed, the benefit usually afforded the plaintiff of viewing all facts in the light most favorable to the plaintiff, is academic.

**B. Validity of Lease**

As a predicate matter, the defendants' motions presume the invalidity of the lease, at least insofar as the defenses of subject matter jurisdiction, tribal sovereign immunity, and exhaustion of tribal remedies are concerned. This presumption is critical to the jurisdictional, tribal sovereign immunity, and exhaustion defenses because the lease explicitly waives sovereign immunity and permits this Court to serve as a forum for adjudication of lease disputes insofar as the controversy fits within the confines of its subject matter jurisdiction. LEASE at ¶¶ 30(a), 30(b), 30(e). In the course of replying to plaintiffs' opposition to the tribe's motion to dismiss, the tribe argues that:

> The claims by the plaintiff are based on the lease. Although the lease is invalid, plaintiffs continue to assert its validity . . . . Any jurisdictional or substantive claims against the tribe must rise or fall on principles outside the void lease.
>
> * * *
>
> Plaintiffs' response to the tribe's position that it has not waived sovereign immunity is to assert the validity of the lease at issue in this case. However, the lease relied upon by the plaintiffs is void . . . . A void lease cannot accomplish a waiver of sovereign immunity or bestow any rights upon the plaintiffs.

TRIBE'S REPLY BRIEF at 5, 6. While plaintiffs' claims presume the validity of the lease, defendants' motions to dismiss have currency only if the Court presumes the lease is "void." Thus the defendants' motions and argument place before the Court a threshold question of whether the lease is or is not void. If the lease is indeed void, then plaintiffs cannot count upon the lease's waivers and jurisdictional provisions in opposing defendants' motions; if the lease is not void, defendants' motions respecting jurisdiction, sovereign immunity, and exhaustion are without merit.

What is not in issue in this case is the secretary's authority to terminate a lease; what is in issue is the process employed by the secretary for doing so. The law does provide mechanisms for termination of a lease previously approved: (1) approval of the lease can be administratively appealed pursuant to 25 C.F.R. Part 2; (2) a lessee's violation of the lease terms is grounds for the secretary to terminate the lease pursuant to 25 C.F.R. § 162.14 if, following notice and an opportunity to cure, the lessee fails to correct the lease violation; (3) an expired and non-renewed lease can be terminated; or (4) a lease can be terminated upon a judicial determination that the approval of the lease was contrary to law. Brown v. U.S., 86 F.3d 1554 (Fed. Cir. 1996); Gray v. Johnson, 395 F.2d 533 (10th Cir. 1968). Inherent in all of these termination options is some measure of due process.[5] Option 1 cannot serve to justify the secretary's termination because no individual or entity appealed the lease approval. Option 3 is inapplicable because the subject lease was not an expired lease. Option 4 does not explain the

[5] This Court recognizes than an administrative agency possesses some inherent authority to review and reconsider its prior decisions. Such exercises of inherent authority are not immune from due process constraints. Belville Mining Co. v. United States, 999 F.2d 989 (6th Cir. 1993).

secretary's termination since no judicial determination was sought to declare the lease as being contrary to law.

Of the four available mechanisms for terminating a lease of this nature, only Option 2 could fit the secretary's avowed purpose. Ostensibly the lease was terminated due to concerns raised by the intervenors in the D.C. litigation, and by the EPA after the fact, that NEPA compliance had been inadequate. Of interest with respect to this allegation are three admissions by the defendants during the hearing in this matter:

1. The tribe acknowledges that the lease terms require NEPA compliance on the part of the lessee; the tribe admits that Sun Prairie would be in violation of the lease if it ignored NEPA requirements. TRANSCRIPT at 40; LEASE at ¶¶ 21 and 22.

2. The federal defendants acknowledge that the environmental compliance concerns could have been cured. TRANSCRIPT at 9.

3. The federal defendants admit that the lease was terminated to settle the D.C. lawsuit. TRANSCRIPT at 20.

Under the terms of the lease the secretary approved, NEPA non-compliance is a lease violation. Federal regulations require the secretary to notify a lessee of a lease violation and to permit the lessee 10 days in which to agree to cure the violation. 25 C.F.R. § 162.14. 25 C.F.R. § 162.14 states in pertinent part that:

> Upon a showing satisfactory to the Secretary that there has been a violation of the lease or the regulations in this part, the lessee shall be served with written notice setting forth in detail the nature of the alleged violation and allowing him ten days from the date of receipt of notice in which to show cause why the lease should not be cancelled . . . . If within the ten-day period, it is determined that the breach may be corrected and the lessee agrees to take the necessary corrective measures, he will be given an opportunity to carry out such measures and shall be given a reasonable time within which to take corrective action to cure the breach. If the lessee fails within such reasonable time to correct the breach or to furnish satisfactory reasons why the lease should not be terminated, the lessee shall forthwith be notified in writing of the cancellation of the lease and demands shall be made for payment of all obligations and for possession of the premises.

The federal defendants admit that the environmental compliance concerns could have been cured. Thus, rather than unilaterally terminating a lease, federal regulations required the secretary to provide

notice to Sun Prairie, and an opportunity for Sun Prairie to cure the environmental compliance issues, which the federal defendants admit were curable. While it may have been expedient for the government to terminate the lease to settle a lawsuit with intervenors, plaintiffs' rights were a casualty of that expediency. The secretary's lease termination did not comply with applicable federal due process regulations. The lease, accordingly, is valid, and its terms control the Court's analysis of the pending motions to dismiss.

**C. Standing**

Determining the lease to be valid gives rise to a question of standing posed by the defendants' motions and raised in argument during the hearing on the subject motions. TRIBE'S REPLY at 2. In Rosebud Sioux Tribe the Eighth Circuit Court of Appeals determined that Sun Prairie lacked prudential standing to challenge the secretary's lease termination. The question then arises why Sun Prairie would have standing for purposes of this case if it had no standing in the previous case. For the Court, the distinctions are found in the differing nature of the legal theories advanced in the previous litigation vis-a-vis those advanced in this case and in the relief Sun Prairie requests in this case. In Rosebud Sioux Tribe Sun Prairie challenged the substance of the secretary's decision. The appellate court correctly determined that 25 U.S.C. § 415 was enacted for the benefit of Indian tribes, not lessees of Indian land, which removed Sun Prairie from the zone of interests protected by the statute. Because the statute in question was not enacted for Sun Prairie's benefit, it had no standing to question the reasoning behind the secretary's termination of the lease. Rosebud Sioux Tribe, 286 F.3d at 1037.

At issue in this case is not the substance of the secretary's determination, but rather the process required of him when terminating a lease, not just for the protection of Indian tribes, but also for the protection of lessees. 25 C.F.R. § 162.14 explicitly extends process protections to lessees that are due

before a lease is terminated. In this case, the federal defendants agree there is "an abiding interest in seeing that contracts between people such as Sun Prairie and the tribe are approved and, when they are approved, are to be carried forward." TRANSCRIPT at 19. Judicial declarations of public policy surrounding 25 U.S.C. § 415 affirm this principal as well.

In Yavapai-Prescott Indian Tribe v. Watt, 707 F.2d 1072 (9th Cir. 1983), the court noted that the absence of continuity and the rule of law in the 25 U.S.C. § 415 context:

> [W]ill tend to depress the value of the lease to the lessee and discourage erection of substantial improvements on the leasehold. This could reduce the return to the tribes from long-term commercial leases.

Yavapai-Prescott, 707 F.2d at 1074. The court in United Nuclear Corporation v. United States, 912 F.2d 1432 (Fed. Cir. 1990), made the same point in more blunt terms when it observed that:

> It is difficult to understand, however, how encouraging the Indians not to live up to their contractual obligations, which they entered into freely and with the Secretary's approval, could be said to encourage self-determination.

United Nuclear, 912 F.2d at 1437. Yavapai-Prescott concerned a tribe's unilateral termination of a lease without secretarial approval, as opposed to a secretary's unilateral termination of a lease that we see in this case. The principal is the same notwithstanding. Accountability in the process benefits the tribes; unilateral terminations of tribal leases, whether by the tribe or by the secretary, must be discouraged if tribes are to benefit from the lease options available under the various federal statutes permitting the commercial leasing of tribal trust land. 25 C.F.R. § 162.14 extends due process to lessees and assures lessees that they can expect at least notice and an opportunity to be heard before valuable rights are terminated. As discussed in greater detail in the following paragraphs, a denial of due process in this context implicates constitutional concerns as well. The Rosebud Sioux Tribe court determined that "Sun Prairie has satisfied the constitutionally-mandated elements of standing." Rosebud Sioux Tribe, 286 F.3d at 1036. Insofar as Sun Prairie raises issues of constitutional due process arising out of its alleged property interest in the subject lease and the denial of process due

under 25 C.F.R. § 162.14, as opposed simply to questioning the substance or reasoning of the secretary's determination, Sun Prairie's lease stands within the zone of interests protected by the constitution and federal regulations. Sun Prairie has standing to raise the issues thus defined.

**D. Sovereign Immunity/Subject Matter Jurisdiction**

Both the federal defendants and the tribe request dismissal on the grounds of federal sovereign immunity and the absence of subject matter jurisdiction. Federal sovereign immunity will not shield the government from acts which unconstitutionally impair the property rights of citizens, and claims alleging such conduct are within the Court's subject matter jurisdiction.. U.S.C.A. *Const.Amend. 5*; 28 U.S.C. § 1346(a)(2)(Tucker Act); Larson v. Domestic & Foreign Commerce Corporation, 337 U.S. 682, 69 S. Ct. 1457 (1949). Leasehold interests are property interests protected by the Fifth Amendment. United Nuclear Corporation v. United States, 17 Cl. Ct. 768 (U.S.Cl.Ct. 1989). Before the federal government's sovereign immunity may be deemed waived, and before subject matter jurisdiction may attach, it must first be determined that Sun Prairie can be said to have a vested, protected property interest in the subject lease.

The Court has identified two cases pertinent to determining the level of constitutional protection afforded Sun Prairie's lease interest. In Sangre de Cristo Development Company, Inc. v. United States, 932 F.2d 891 (10th Cir. 1991), a tribal lessee sued the United States following a termination of a lease previously approved by the Secretary of the Interior. The secretary "rescinded" approval of Sangre de Cristo Development Company's lease on the grounds that virtually none of the environmental compliance studies required by NEPA had been undertaken prior to the lease approval. The Sangre de Cristo court ruled that the lessee could not be regarded as holding a vested property interest in a lease that had not been submitted to, and approved pursuant to, any semblance of appropriate environmental process.

In United Nuclear Corporation v. United States, 912 F.2d 1432 (Fed.Cir. 1990), a tribal lessee sued the United States after a tribal mining lease expired without the lessee being able to conduct the mining operations permitted by the lease. Mining operations were frustrated by the Secretary of Interior's unwillingness to approve a mining plan unless the tribe also affirmed the plan. No law or regulation or term of the lease authorized the secretary to vest the tribe with any such veto of the mining plan. The tribe, wanting to coerce the mining company to make greater payments to the tribe than provided for in the lease, withheld approval. The United Nuclear court found that the mining lease "had met necessary environmental impact requirements," and that the secretary's imposition of further requirements not found in law or contract, i.e., the tribal veto, resulted in a taking of the mining company's vested property interest in the lease. United Nuclear, 912 F.2d at 1436-37.

As between the two cases, the Court finds the United Nuclear decision most apposite to the subject case. The Sangre de Cristo case is inapposite because the lease in that case had been submitted to *none* of the requisite environmental studies prior to approval. In the subject case, Sun Prairie's interest in its lease is defined by the following facts and events: (1) the lease was reviewed by the BIA; (2) the BIA retained an environmental engineering firm to conduct a NEPA environmental assessment; (3) the environmental assessment determined that no environmental impact study was required; (4) the appropriate BIA official entered a finding of no significant impact; (5) when asked for comment the Environmental Protection Agency raised no objection to the lease; (6) the lease was approved by a duly authorized BIA official; (7) the period of appeal of the approved lease lapsed with no objection from defendants, intervenors, any government agency, or any other person or entity; and (8) in reliance upon all of the foregoing facts and events, Sun Prairie invested millions of dollars in project construction, and incurred tens of millions of dollars in indebtedness.

Subsequent to all of these events, intervenors and others questioned why the environmental assessment did not further require an environmental impact study. The EPA allegedly and belatedly

questioned the adequacy of the initial environmental assessment. A change in tribal administration resulted in elections of officials opposed to Sun Prairie's project. Whereas a previous tribal administration welcomed the project, the successor administration feels the project "rapes" the land and feels the tribe does not need "this kind of economic development." TRANSCRIPT at 47. Intervenors filed a lawsuit in federal court alleging deficient environmental review, which would constitute a violation of the lease under ¶¶ 21 and 22. In response to these political and legal developments, the secretary unilaterally terminated a lease previously approved. Whereas the plaintiff developer's project in Sangre de Cristo had not been submitted at all to environmental review, Sun Prairie's project was submitted to the BIA's environmental review and subsequently approved by the BIA after a finding of no significant impact.

In United Nuclear, the mining company's lease and mining plan was determined to have "met necessary environmental impact requirements." United Nuclear, 912 F.2d at 1434. Having once approved the lease and found it in compliance with environmental impact requirements, United Nuclear affirms that the secretary is not permitted thereafter to invent procedure; he is bound to follow established law in exercising his oversight over a lease within his jurisdiction. The secretary cannot impose terms or conditions beyond those existing in the law. In this case, Sun Prairie's lease had also been found to meet necessary environmental impact requirements. Defendants and intervenors allege that such finding was made in error. This may or may not be true, but it is ultimately irrelevant to the narrow and singular issue of whether the subject lease constitutes a vested property interest.

It cannot be said that the plaintiff developer's environmental compliance or non-compliance in Sangre de Cristo was merely a matter of opinion; there had been no observation of environmental law whatsoever. The Court agrees that where environmental review non-compliance is indisputable, no protected property interest can vest in a lease subject to secretarial approval under 25 U.S.C. § 415.

In this case, the federal defendants filed and answer in the D.C. litigation denying that Sun Prairie had failed to comply with environmental compliance requirements. Defendants' and intervenors' argument that Sun Prairie's environmental compliance is deficient is a matter of opinion, and a subject of dispute between opposing parties with divergent political agendas. One tribal council's economic development opportunity is another tribal council's land "rape;" it is the rule of law that prevents such competing policy objectives from degenerating into anarchic disruption. Sun Prairie submitted its project to a NEPA environmental compliance study conducted by a consultant hired not by it, but by the BIA. The only environmental finding of record in this case that is the product of any due process is that of the BIA's consultant, which found Sun Prairie's environmental compliance appropriate. Thus approved through appropriate legal process, and with the encouragement of the tribe, Sun Prairie invested tens of millions of dollars into its hog farming enterprise.

Defendants and intervenors disagree with the BIA environmental consultant's finding, but that disagreement does not become policy to the detriment of established rights without some process being due. Sun Prairie's alleged environmental non-compliance is a lease violation for which the law provides appropriate due process remedies. The secretary has judicial and regulatory mechanisms available to him to investigate and remedy a lease violation. Indeed, the Court is aware of nothing to prevent the secretary from yet invoking the notice procedures of 25 C.F.R. § 162.14's successor regulation as a consequence of this Court's determination that the purported approval rescission is void.[6] Under the lease, Sun Prairie's duty of environmental compliance is a continuing one. Finding that Sun Prairie, under the circumstances of this case, has a vested property interest in the subject lease does not undermine the nation's environmental protection policies, nor does it undermine the secretary's authority to enforce those policies in the context of leases within his or her oversight.

---

[6] Current regulations provide similar due process protections for agricultural and non-agricultural leases as were previously provided by 25 C.F.R. 162.14. 25 C.F.R. §§ 162.251 et seq. and 162.617 et seq.

When judged by the economic impact of the secretary's actions on Sun Prairie, the extent to which the regulation has interfered with Sun Prairie's investment-backed expectations, and the nature of the secretary's action, the Court concludes that Sun Prairie did have a vested property interest in the lease in question at the time it was unilaterally terminated by the secretary. United Nuclear, 912 F.2d at 1436-37. A party deprived of a vested property interest by governmental action has remedies available under the Tucker Act and the Larson doctrine, both of which waive the federal government's sovereign immunity.

With respect to the federal defendants, Sun Prairie's complaint does not seek money damages. During oral argument, Sun Prairie's counsel advised the Court that Sun Prairie is seeking only "equitable" and "injunctive" relief, or, in other words, a ruling invalidating the secretary's rescission. TRANSCRIPT at 41. The Tucker Act vests district courts with the jurisdiction to hear Fifth Amendment claims where the plaintiff seeks less than $10,000 in damages. 28 U.S.C. § 1346(a)(2).[7] The Larson doctrine waives federal sovereign immunity and vests district courts with jurisdiction to hear complaints involving (1) action by federal officers beyond their statutory authority (*ultra vires)* or (2) action by federal officers, even within the scope of their authority, if the powers themselves or the manner in which they are exercised are constitutionally void. Johnson v. Mathews, 539 F.2d 1111 (8th Cir. 1976). The Larson doctrine limits the remedy available to a litigant to "merely ordering the cessation of the conduct complained of." Johnson, 539 F.2d at 1124. Any remedy which would "require affirmative action by the sovereign" or which would "expend itself on the public treasury or domain, or interfere with the public administration" cannot be obtained in a Larson suit. Johnson, 539 F.2d at 1124.

---

[7] The Tucker Act allows equitable relief only when it is incidental and collateral to a monetary claim. C.H. v. Sullivan, 920 F.2d 483 (8th Cir. 1990). Given this Court's determination that the Larson doctrine provides grounds for both a waiver of sovereign immunity and subject matter jurisdiction, and because no record on the question has yet been developed, the Court is not addressing the question of whether a request by plaintiff for nominal damages in this case for less than $10,000 would provide the type of monetary claim to which the plaintiffs' request for equitable and injunctive relief would be incidental and collateral.

It appears from the plaintiffs' complaint, and the representations made by the plaintiffs' counsel at oral argument in this case, that plaintiffs allege conduct on the part of the secretary that is constitutionally void and that plaintiffs' desired remedy is one for, at most, nominal damages and for an order for the cessation of the secretary's enforcement of the invalid lease termination. A claim of this nature is embraced by both the Tucker Act and the Larson doctrine. Consequently, sovereign immunity is no barrier to the plaintiffs' complaint, and authorities are clear this Court has subject matter jurisdiction to hear such a complaint.

**E. Jurisdiction Over Tribal Contract Claims**

While the lease provisions provide for a federal forum for breaches by the tribe, the Court must concern itself with whether such claims are appropriately within its jurisdiction. Pursuant to 28 U.S.C. § 1367, the district courts may exercise supplemental jurisdiction over all other claims that are so related to claims in the action within the court's original jurisdiction that they form part of the same case or controversy. In light of the Court's determination regarding the invalidity of the secretary's lease termination, the Court determines that supplemental jurisdiction over the tribal contract claims is appropriate. Paragraph 42 of the lease in question is a savings clause that requires the tribe to appropriately amend the lease to conform to applicable law. Taking plaintiffs' allegations as true, it appears that the secretary's decision has served as a pretext for the tribe's breaching conduct. In other words, even if some illegality attends to the lease, the tribe is bound by the lease to aid Sun Prairie affirmatively in correcting any legal impediment such that the lease will comply with the law. Assuming plaintiffs' facts to be true, the tribe has not done so; it has elected instead to breach the lease. The complaint alleges that the tribal council president has expressed the intent of seeing the tribe "take over" Sun Prairie's farms. COMPLAINT at ¶ 56. As in United Nuclear, facts alleged by the plaintiffs suggest ulterior motives underlying the tribe's legal constructs. What is undisputed is that the duly authorized tribal authorities approved the lease in 1998. TRANSCRIPT at 13. Plaintiffs

allege that the tribe, since realigning itself with the secretary's termination, has breached its contractual obligations. These allegations suggest that the tribe's alleged breaching of the contract both emanates from, and is empowered by, the secretary's lease termination. As such, the breach forms part of the same case and controversy surrounding the administrative disposition of the subject lease so as to bring the case within the Court's supplemental jurisdiction.

**F. Tribal Sovereign Immunity**

Defendant tribe argues that the tribe, as a sovereign entity, and its agencies are immune from suit. As previously discussed, ¶ 30(a) of the lease provides an express waiver of tribal sovereign immunity. The tribe's sovereign immunity argument, by the tribe's admission, is premised upon the invalidity of the lease. The tribe offers no argument that sovereign immunity bars this suit notwithstanding the lease. Having found the secretary's invalidation of the lease to be void, the lease provision waiving sovereign immunity is determinative of the tribe's sovereign immunity defense.

**G. Exhaustion of Tribal Court Remedies**

Defendant tribe argues that this case is a legal dispute regarding a matter arising on Indian land within the jurisdiction of the tribal court. As noted above, ¶ 30(b) of the lease provides the parties with the option of seeking a remedy in either tribal court or in this Court. In addition, ¶ 30(e), which explicitly pertains to tribal court jurisdiction, describes the tribal court's jurisdiction as "nonexclusive." The tribe's argument on this point, by the tribe's admission, is premised upon the invalidity of the lease. The tribe offers no argument that exhaustion of tribal remedies is required by the terms of the lease. Having found the invalidation of the lease to itself be invalid, the lease's waiver of any exhaustion requirement that might otherwise exist in law is controlling.

**H. Impairment Clause**

Count 7 of the plaintiffs' complaint alleges that the tribe's conduct constitutes an impairment of contract in violation of Article 1, § 10 of the United States Constitution. Defendant tribe makes note

that, as sovereign entities, the United States Constitution is inapplicable to Indian tribes.[8] Plaintiffs acknowledge this to be the law. Sun Prairie argues that the tribes are treated like states for many other purposes of the law so that treating the tribe as a state in this instance is consistent with policy in other areas. Plaintiffs cite no authority for this proposition. The Court is not inclined to enter uncharted legal territory on the basis of mere argument. Plaintiffs' constitutional impairment clause claim against the tribe cannot be sustained.

**I. Claim Splitting**

Defendant tribe argues that the subject claim is precluded by plaintiffs' failure to raise the claims now asserted against the tribe in the prior district court action before Judge Kornmann. This argument has no merit. At the time the prior district court action was commenced, the tribe was still aligned with the plaintiffs. The tribe realigned itself with the federal defendants during the federal defendants' appeal of Judge Kornmann's decision. It appears from the complaint that the conduct complained of in the subject lawsuit had yet to transpire at the time the prior district court case was commenced. So long as the plaintiffs and the tribe were allied, it was reasonable for Sun Prairie to challenge the substance of the secretary's ruling rather than its constitutionality. In addition, the prior case, having been dismissed for lack of standing, was not a decision on the merits such as would preclude a splitting of claims. McCarney v. Ford Motor Co., 657 F.2d 230, 234 (8th Cir. 1981). Plaintiffs have not impermissibly split their claim.

**J. United States As Indispensable Party**

Defendant tribe argues that the plaintiffs' complaint must be dismissed for failure to join the United States as an indispensable party. The above-captioned claim names two federal officers in their official capacities. An action against a federal officer acting in his or her official capacity is in

---

[8] Settler v. Lameer, 507 F.2d 231 (9th Cir. 1974); Native Am. Church v. Navajo Tribal Council, 272 F.2d 131 (10th Cir. 1959); Talton v. Mayes, 163 U.S. 376 (1896); Santa Clara Pueblo v. Martinez, 436 U.S. 49 (1978).

actuality an action against the United States. Coleman v. Espy, 986 F.2d 1184 (8th Cir. 1993). The relief demanded against the tribe does not in any way depend upon whether the United States is or is not formally named as a party to this action. Defendant tribe bluntly states that "a suit involving the lease of Indian trust land most certainly requires the presence of the United States as a party," yet defendant tribe cites no authority supporting the statement. TRIBE'S REPLY at 8. The federal defendants do not assert that it is the United States and not its individual officers who should be named. Plaintiffs' limited remedies are consistent with Tucker Act and Larson doctrine claims against the United States. Naming a federal officer acting in his official capacity as a defendant is equivalent to naming the United States.

**K. Tribal Statute of Limitations**

Defendant tribe seeks dismissal of all claims against it on the grounds that the claims are barred by the tribe's one-year statute of limitations. This allegation raises questions of fact regarding the dates upon which acts causing the accrual of the claims occurred. The Court finds that the tribe's statute allegation cannot be resolved on the record developed up to this point, both as to the legal issues of which statute of limitation should be applied and the application of equitable principals to any statute, and as to the factual issues of what conduct constitutes the breach complained of, whether such conduct is continuing, the effect of continuing conduct on any alleged statute, etc. Within the briefing provided, the Court does not find adequate grounds for dismissal of all claims against the tribe on a statute of limitations theory.

**L. Interference With Contract**

Plaintiffs assert claims for interference with contract. A claim of this nature is a state law tort claim which contemplates that a person or entity not a party to the subject contract has in some manner induced one who is a party to the contract to breach the contractual obligation. S.D.Civ.P.J.I. 170-40-1. The tribe is a party to the subject contract. The Court finds no precedent that a party to a

contract who acts in breach of the contract has "interfered" with the contract and is thus tortiously liable. If one who is a party to a contract fails in the performance thereof, such conduct is simply a breach. Accordingly, the Court finds no basis for sustaining claims against the tribe for interference with a contract to which it is a party.

For the reasons stated herein, it is accordingly hereby

ORDERED that the federal defendants' motions to dismiss on the grounds of federal sovereign immunity and for lack of subject matter jurisdiction are denied.

IT IS FURTHER ORDERED that the tribal defendant's motion to dismiss for lack of jurisdiction is denied.

IT IS FURTHER ORDERED that the tribal defendant's motion to dismiss on the grounds of tribal sovereign immunity is denied.

IT IS FURTHER ORDERED that the tribal defendant's motion to dismiss for failure to exhaust tribal court remedies is denied.

IT IS FURTHER ORDERED that the tribal defendant's motion to dismiss regarding plaintiffs' impairment of contract claim is granted.

IT IS FURTHER ORDERED that the tribal defendant's motion to dismiss regarding claim splitting is denied.

IT IS FURTHER ORDERED that the tribal defendant's motion to dismiss for failure to join the United States as an indispensable party is denied.

IT IS FURTHER ORDERED that the tribal defendant's motion to dismiss regarding the one-year tribal statute of limitations is denied.

IT IS FURTHER ORDERED that the plaintiffs' claims for interference with contract against the tribe are dismissed.

IT IS FURTHER ORDERED that, consistent with the Court's rulings as stated in the foregoing memorandum opinion, Counts 7, 10, 11, 12 of the plaintiffs' complaint are dismissed.

IT IS FURTHER ORDERED that Counts 3 and 4 of the plaintiffs' complaint are dismissed as redundant of Counts 1, 2, and 13.

IT IS FURTHER ORDERED that Count 14 of the plaintiffs' complaint is dismissed as such count states a remedy, not a legal cause of action.

Dated this 5th day of June, 2003.

BY THE COURT:

Richard H. Battey

RICHARD H. BATTEY
UNITED STATES DISTRICT JUDGE

FILED

OCT 15 2002

CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

SUN PRAIRIE, a partnership, and BELL FARMS, LLP, a Nebraska limited liability partnership,

Plaintiffs,

v.

NEAL McCALEB, Assistant Secretary--Indian Affairs, U.S. Dept of Interior, in his official capacity; and GAIL NORTON, Secretary of the Dept. of Interior, in her official capacity; ROSEBUD SIOUX TRIBE, a federally recognized Indian Tribe,

Defendants.

CIV 02-3030

**FEDERAL DEFENDANTS' MOTION**
**TO DISMISS FOR LACK OF JURISDICTION**

For all the reasons set forth in the accompanying memorandum of law in support, Federal Defendants herewith respectfully move the Court under Fed. R. Civ. P. 12(b)(1) to dismiss the claims of Plaintiffs Sun Prairie and Bell Farms, LLP for lack of subject matter jurisdiction.

Dated this 15th day of October, 2002.

THOMAS L. SANSONETTI
Assistant Attorney General

Thomas R. Bartman
U.S. Department of Justice
Environment & Natural Resources Division
General Litigation Division
P.O. Box 633
Washington, DC 20044-0633
(202) 305-0427

JAMES E. MCMAHON
UNITED STATES ATTORNEY

Cheryl Schrempp DuPris
Cheryl Schrempp DuPris
Assistant United States Attorney
225 S. Pierre St., Suite 337
Pierre, SD 57501
(605) 224-5402

15

FILED
JUN 17 2003
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | | |
|---|---|---|
| SUN PRAIRIE, a partnership; and BELL FARMS, LLP, a Nebraska Limited Liability Partnership, | ) | |
| Plaintiffs, | ) | CIV 02-3030 |
| v. | ) | FEDERAL DEFENDANTS' MOTION FOR EXTENSION OF TIME TO ANSWER COMPLAINT |
| AURENE MARTIN, Assistant Secretary - Indian Affairs, Department of the Interior, in his official capacity; GAIL NORTON, Secretary of the Department of Interior, in her official capacity; and ROSEBUD SIOUX TRIBE, a federally recognized Indian Tribe, | ) | |
| Defendants. | ) | |

The Federal Defendant, Aurene Martin, Assistant Secretary, Indian Affairs, United States Department of Interior, in his official capacity, respectfully moves for an extension of 30 days from June 19, 2003, until Monday, July 21, 2003, within which to file an Answer to the Complaint.

In support of this motion, the Defendant states that:

1. On June 5, 2003, the Court entered its decision denying the Defendant's and the Tribe's motions to dismiss this case. Defendant received the decision on June 9, 2003.

2. Since receiving the decision, Defendant has been largely involved with analyzing it and determining an appropriate course of action in the context of this long and much litigated matter and continues to do so. Defendant's legal counsel will also be in further conversation with attorneys for the other parties to the case in that regard.

3. In order to pursue those efforts, R. Anthony Rogers, counsel for the Defendant, has contacted counsel and obtained the consent of all the parties for this requested extension of time.

Dated this 17th day of June, 2003.

Respectfully submitted,

R. Anthony Rogers
U.S. Department of Justice
Environment & Natural Resources Div.
General Litigation Division
P.O. Box 633
Washington, DC 20044-0633
(202) 305-0483
FAX: (202) 305-0506

JAMES E. MCMAHON
UNITED STATES ATTORNEY

Cheryl Schrempp DuPris
Cheryl Schrempp DuPris
Assistant United States Attorney
225 S. Pierre St., Suite 337
Pierre, SD 57501
(605) 224-5402
FAX: (605) 224-8305

CERTIFICATE OF SERVICE

On June 17th, 2003, I caused to be mailed Federal Defendants' Motion For Extension of Time to Answer Complaint and Proposed Order to the following persons via overnight mail:

Charles M. Thompson, Esq.
P.O. Box 106
503 South Pierre St.
Pierre, SD 57501
(605) 224-8803

Gregory A. Fontaine, Esq.
Sun Prairie, A Partnership
7900 International Drive, Suite 200
Bloomington, MN 55425
(952) 854-8437

Skip Durocher, Esq.
50 South Sixth Street, S. 1500
Minneapolis, MN 55402
(612) 340-2600

Terry L. Pechota, Esq.
1617 Sheridan Lake Road
Rapid City, SD 55702-3483
(605) 341-4400

James L. Dougherty, Esq.
709 3d St. SW
Washington, DC 20024
(202) 488-1140

Cheryl Schrempp DuPris

Cheryl Schrempp DuPris
Assistant United States Attorney

FILED

JUN 0 1 2004

CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

SUN PRAIRIE, a partnership, and BELL FARMS, LLP, a Nebraska limited liability partnership

Plaintiffs,

v.

DAVID ANDERSON[1]
Assistant Secretary – Indian Affairs,
U.S Department of the Interior,
in his official capacity; and
ROSEBUD SIOUX TRIBE,
a federally recognized Indian Tribe,

Defendants.

Civil File No.: CIV02-3030

FEDERAL DEFENDANTS' CONSENTED MOTION FOR EIGHTH EXTENSION OF TIME TO ANSWER COMPLAINT

With the consent of the all the other parties, Federal Defendant, David Anderson, Assistant Secretary – Indian Affairs, United States Department of Interior, in his official capacity, respectfully moves for an eighth extension of sixty-two days from June 1, 2004, until August 2, 2004, within which to file an Answer to the Complaint.

In support of this motion, the Federal Defendant states that:

1. As reported in previous extension motions, the Federal Defendant has been seeking to get the parties together in an effort to resolve this case without further litigation and would like to continue that effort without filing an Answer to the Complaint.

2. Some recent movement may permit a renewed attempt to pursue that aim.

---

[1]Mr. Anderson has become the Assistant Secretary – Indian Affairs following his Senate confirmation and is substituted as the Federal Defendant in place of Aurene Martin, Mr. Anderson's continuing Principal Deputy.

3. Federal Defendant respectfully suggests that another two-month period without having to file the Answer might prove useful in those efforts.

4. R. Anthony Rogers, attorney for the Federal Defendant, has contacted the other parties concerning this motion, and no party opposes this motion.

Dated this 28th day of May, 2004

Respectfully submitted,

R. Anthony Rogers
Senior Attorney
U.S. Department of Justice
Environment & Natural Resources Div
General Litigation Division
P.O. Box 633
Washington, DC 20044-0633
(202) 305-0483
FAX: (202) 305-0506

JAMES E. MCMAHON
UNITED STATES ATTORNEY

Cheryl Schrempp DuPris
Cheryl Schrempp DuPris
Assistant United States Attorney
225 S. Pierre St., Suite 337
Pierre, SD 57501
(605) 224-5402
FAX: (605) 224-8305

**CERTIFICATE OF SERVICE**

On May 28, 2004, I caused to be mailed Federal Defendant's Motion For Extension of Time to Answer Complaint and Proposed Order to the following persons via overnight mail:

Charles M. Thompson, Esq.
P.O. Box 106
503 South Pierre St.
Pierre, SD 57501
(605) 224-8803

Gregory A. Fontaine, Esq.
Sun Prairie, A Partnership
7900 International Drive, Suite 200
Bloomington, MN 55425
(952) 854-8437

Skip Durocher, Esq.
50 South Sixth Street, S. 1500
Minneapolis, MN 55402
(612) 340-2600

Terry L. Pechota, Esq.
1617 Sheridan Lake Road
Rapid City, SD 55702-3483
(605) 341-4400

James L. Dougherty, Esq.
709 3d St. SW
Washington, DC 20024
(202) 488-1140

Cheryl Schrempp DuPris
Cheryl Schrempp DuPris