# EXHIBIT K

**From:** Mark Marshall
**To:** John.Turner@usdoj.gov; Mark Kaster
**Date:** 4/6/2005 9:10:20 AM
**Subject:** RE: Sun Prairie; Motion for Extension, Draft C.J./Order

Gentlemen,

I met with the Rosebud Sioux Tribal Council for an extended period on Tuesday, April 5, 2005. The Tribe is grateful that the United States agreed to leave the Tribe's claims open against it. Additionally the Tribe asks you consider the Tribes proposed changes to paragraph 5, as shown on the attached, red-lined version of the proposed judgment by consent and order.

Jim Dougherty met with opponents to the project on March 26, 2005 and attempted to rally the opponents of the project. I believe that he met with only limited success.

Additional meetings with tribal members and elders will be held today and tomorrow. I believe that it is more likely than not that the judgment by consent will be approved early next week. Acceptance of the minor changes sought by the Tribe will enhance the likelihood that the Tribal Council will pass a resolution approving of the proposed judgment.

Additionally, we believe that it would prudent to request a hearing before judge Battey on the proposed judgment by consent at which the intervenors could be heard on their objections. I have very little doubt that the intervenors could dissuade Judge Battey from approving the judgment by consent and would probably reinforce the Judge's decision to approve it.

I look forward to hearing from you at your convenience.

Mark F. Marshall
Davenport, Evans, Hurwitz & Smith, L.L.P.
206 West 14th Street
P.O. Box 1030
Sioux Falls, SD 57101-1030

Telephone: 605-357-1246
Fax: 605-335-3639
E-mail: mmarshall@dehs.com

*****************************************************************************************
Note: This e-mail and any attachments may be privileged and confidential and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of this e-mail and any attachments is strictly prohibited. If you have received this e-mail in error, please notify us immediately by returning it to the sender and deleting it from your computer system. Thank you for your cooperation. Davenport, Evans, Hurwitz & Smith, L.L.P.
*****************************************************************************************

**CC:** Edward.Passarelli@usdoj.gov; Roger.Martella@usdoj.gov

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

SUN PRAIRIE, A PARTNERSHIP, and BELL FARMS, LLP, a North Dakota Limited Liability Partnership,

Plaintiffs,

v.

JAMES CASON, Acting Assistant Secretary – Indian Affairs, U.S. Department of the Interior, in his official capacity; GALE NORTON, Secretary of the Department of the Interior, in her official capacity; ROSEBUD SIOUX TRIBE, a federally recognized Indian tribe,

Defendants,

and

CONCERNED ROSEBUD AREA CITIZENS, HUMANE FARMING ASSOCIATION, SOUTH DAKOTA PEACE AND JUSTICE CENTER, and GEORGE ENGLAND,

Intervenor-Defendants.

Civil File No. CIV 02-3030

**JUDGMENT BY CONSENT AND ORDER**

## INTRODUCTION

1. *Original Parties to this Action.* This action arose initially out of a Complaint filed on August 14, 2002, by Plaintiff Sun Prairie, A Partnership, a Nebraska general partnership, and Plaintiff Bell Farms, LLP, a North Dakota limited liability partnership,

against the Federal Defendants, Gale Norton, Secretary of the Department of Interior, in her official capacity, and Neal McCaleb, then-Assistant Secretary-Indian Affairs for the United States Department of Interior, and the Defendant Rosebud Sioux Tribe (the "Tribe"). Aurene Martin, and later David Anderson, was substituted in the caption pursuant to Federal Rule of Civil Procedure 25(d). Mr. Anderson resigned effective February 12, 2005, and James Cason, the Associate Deputy Secretary of Interior, was named the acting Assistant Secretary – Indian Affairs.

2. *Nature of Action.* The Complaint arises from a land lease (the "Lease") executed by the Tribe and Sun Prairie and approved by the BIA providing for construction and operation of 13 hog farms on tribal trust land on the Rosebud Indian reservation. The Complaint challenges the Federal Defendants' issuance of a letter on January 27, 1999, purporting to rescind approval of the Lease and challenges the Tribe's performance of its obligations under the Lease. The Complaint alleges procedural due process, substantive due process, and a claim of a regulatory taking against the Federal Defendants. The Complaint also alleges contract, promissory estoppel, and unjust enrichment claims against the Tribe. The Plaintiffs seek declaratory and equitable relief, including the withdrawal of the January 27, 1999, letter purporting to rescind the Lease, a declaration that the Lease is binding upon the Tribe, and an injunction against further interference with operation of the Plaintiff Sun Prairie's two existing hog farms, the Grassy Knoll farm and the Cottonwood farm (each separately a "Farm" and collectively the "Farms"). The Federal Defendants and Tribe have filed answers denying the material allegations.

3. *Intervention.* The Concerned Rosebud Area Citizens, Humane Farming Association, South Dakota Peace and Justice Center, and George England moved to

intervene in the lawsuit, and the District Court granted their motion on January 26, 2003. The Federal Defendants and Tribe filed motions to dismiss, which the District Court denied in a Memorandum Opinion and Order entered on June 5, 2003. In the opinion, the District Court found that the Assistant Secretary's Lease termination did not comply with applicable federal due process regulations and found that, accordingly, the Lease is valid.

4. *Desire to Settle Action.* The Plaintiffs, Federal Defendants, and Tribe (each a "Party" and collectively herein the "Parties") now desire to settle this lawsuit and have committed to this Consent Judgment.

**TERMS OF CONSENT JUDGMENT**

1. *Jurisdiction and Venue.*

a. The District Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1367, and 2201-02.

b. Venue is proper in the District Court of the District of South Dakota pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claims occurred in this judicial district.

c. The Court may grant declaratory and all other relief necessary to enforce this Judgment pursuant to 28 U.S.C. §§ 2201-02.

2. *Parties.*

a. Plaintiff Sun Prairie, A Partnership, is a Nebraska general partnership that entered into the Lease for construction and operation of the Farms on the Rosebud Sioux Indian Reservation (the "Reservation") near Rosebud, South Dakota. Plaintiff Bell Farms is a North Dakota limited liability partnership that entered into a management contract with Sun Prairie to manage the Farms on the Reservation.

b. James Cason is the acting Assistant Secretary-Indian Affairs for the United States Department of Interior. The Assistant Secretary-Indian Affairs exercises the authorities and responsibilities of the Secretary of Interior for administering laws, regulations, and functions relating to Indian tribes and is responsible to the Secretary for the management of programs and functions executed by the Bureau of Indian Affairs ("BIA"), which includes the administration of leases of tribal lands.

c. Defendant Gale Norton is the Secretary of the Interior Department and oversees all agency functions. The Secretary exercises authority delegated from Congress to manage Indian affairs.

d. The Rosebud Sioux Tribe is a federally recognized Indian tribe with governmental headquarters at Rosebud, South Dakota.

e. The Intervenors, Concerned Rosebud Area Citizens, South Dakota Peace and Justice Center, George England, and the Humane Farming Association oppose the Plaintiffs' construction and operation of the Farms on tribal trust land. In their Answer, the intervenors requested dismissal of the action with prejudice and such other additional or alternative relief as the Court may deem just.

3. *Construction of the Farms.* Sun Prairie, its successors and assigns, will not seek to construct any additional hog farms as provided for under the Lease, beyond the existing two Farms, unless requested to do so by the Tribe, and then only on mutually agreeable terms approved by the BIA in accordance with applicable federal laws.

4. *Term of Operation.*

a. Except as provided herein, Sun Prairie, its successors and assigns, will operate the Farms for no more than fifteen (15) years from the date this Consent

Judgment and Order becomes effective.

b. Upon the expiration of the fifteen-year term, the Tribe shall have the right, at its option and election, to purchase Sun Prairie's right, title and interest in the buildings, fixtures, and improvements at the Farms for a purchase price of one-half (50 percent) of their then fair-market value, to be determined according to the protocol of Exhibit A to this Consent Judgment. The existing provisions of Lease Paragraph ¶ 11(a)-(c) governing the timing, manner of payment, division of closing costs, transfer of property, notice of exercise of option, and removal of personal property and livestock, will govern the Tribe's option to buy and the provisions of the sale.

c. If the Tribe does not exercise its option to purchase, Sun Prairie, its successors and assigns, will be allowed a one-time extension of the Lease term for an additional five (5) years. The existing end-of-term provisions of the Lease will apply and govern the rights and obligations of Sun Prairie and the Tribe at the end of the extended Lease term.

d. In the event of default by Sun Prairie, its successors or assigns, under a credit agreement with a Permitted Mortgagee, and where the Permitted Mortgagee exercises their remedies with respect to such default, the Lease term may be extended to the term of any restructured loan associated with the exercise of such remedies, such extension not to exceed twenty (20) years from the date this Consent Judgment becomes effective, provided that any such extension shall be subject to the Tribe's and BIA's approval, which shall not be unreasonably withheld or delayed. The Permitted Mortgagees' other rights under the Lease remain in force.

e. In the event of default by Sun Prairie, its successors or assigns, and where

the Permitted Mortgagee exercises their remedies with respect to such default, the Permitted Mortgagee may assign the rights and responsibilities of Sun Prairie and/or Bell Farms, LLP, and their successors and assigns, under the Lease to any other commercially reasonable party, for a period not to exceed twenty (20) years from the date this Consent Judgment becomes effective, provided that any assignment shall be subject to the approval of the Tribe and BIA, which approval shall not be unreasonably withheld or delayed. The Permitted Mortgagees' other rights under the Lease remain in force.

f. The Tribe and BIA will provide usual and customary lessor consents and estoppel certificates, as reasonably requested by Sun Prairie and Bell Farms, LLP, their successors and assigns, and by the Permitted Mortgagees and their successors and assigns.

5. *Monetary Payments.*

a. Sun Prairie will make the following Lease payments to the Tribe in satisfaction of all obligatory payments in the Lease, including but not limited to Lease provisions for Rent, Additional Rent and Net Profit sharing. The payments outlined herein supersede all other payment obligations in the Lease. Sun Prairie shall provide summary financial reports to the Tribe annually.

Deleted: is not required to

Deleted: data,

Deleted: , summaries, estimates, or statements of any kind

Deleted: or the BIA

(i) Sun Prairie will make a total fixed payment of $60,000 per calendar year per Farm, commencing *pro rata* in calendar year 2005. Sun Prairie will make semi-annual installment payments on April 1 and October 1 to the BIA for distribution to the Tribe.

(ii) Sun Prairie will pay $15,000 per year for water used from the well Sun Prairie operates at the Cottonwood Farm commencing *pro rata* in calendar year

2005, payable in semi-annual installments due April 1 and October 1 to the BIA for distribution to the Tribe.

(iii) The Tribe will continue to supply water to the Grassy Knoll Farm from the Mni Wiconi tribal water supply system and agrees to make reasonable commercial efforts to assure a proper and sufficient supply of water necessary to operate the Farm from the tribal water supply system.

(iv) Sun Prairie will pay $1.35 per 1,000 gallons of water used at the Grassy Knoll Farm from the water provided by the Tribe from the tribal water supply for three (3) years after this Consent Judgment becomes effective. Thereafter, Sun Prairie will pay $1.50 per 1,000 gallons of water used at the Grassy Knoll Farm from water purchased by the Tribe from its water supplier.

**Deleted:** purchased

(v) The Grassy Knoll water payments may be adjusted for an inflation price index factor starting in the fifth year, which adjustments will be calculated according to the protocol set forth in Exhibit B to this Consent Judgment. If, after the fifth year, the Tribe's water supplier charges the Tribe more than $1.50 per 1,000 gallons of water for an industrial user, the Tribe may offer to charge Sun Prairie the applicable current rate, at which time thereafter Sun Prairie may decide at its discretion to use wells on the Grassy Knoll property, and thereafter Sun Prairie shall not be obligated to purchase water from the Tribe.

(vi) If Sun Prairie elects to not to take water from the Tribe's water supply system for Grassy Knoll, Sun Prairie will pay the Tribe $15,000 per year for water used from the well, to commence *pro rata* in the calendar year Sun Prairie makes the election, and to be paid in semi-annual installments on April 1 and October 1 to the BIA

for distribution to the Tribe. At the end of the Lease term, any wells on the Grassy Knoll and Cottonwood Farms will be turned over to the Tribe, and the Tribe will be fully responsible for maintenance, repair, sealing, and any other costs associated with the wells.

(vii) Except as modified by this Consent Judgment, all other terms of the Lease not inconsistent with these modifications shall remain valid and binding on the Parties. The Tribe and the BIA herein confirm that Sun Prairie is in compliance with the Lease.

(viii) Except as provided in this Section 5, no additional federal or tribal fees, taxes, bonds, assessments or other federal or tribal charges of any kind or nature may be required or levied against the Premises or Sun Prairie or Bell Farms, or their successors and assigns.

b. The BIA will pay $85,000 to Sun Prairie in consideration of the aforementioned water well that Sun Prairie may need to install at the Grassy Knoll Farm and for funding the nutrient management Pilot Study, described below. The amount paid by BIA may be used by Sun Prairie in its sole discretion.

c. Sun Prairie will make a one-time payment of $131,000 to the Tribe for past water used at the Farms. Sun Prairie will make payment within 120 days following entry of this Consent Judgment and Order of the Court.

6. *Return of Land.* Sun Prairie will return unencumbered control to the Tribe and the BIA, as appropriate, all of the other Leased Sites not otherwise allotted for in the Pilot Study described below or the parcels comprising the Farms, or the acreage needed for Sun Prairie's operation of the Farms (e.g., acreage needed for operational access, utilities,

rights of way and easements for the current Farms).

7. *Environmental Controls and Measures.* Sun Prairie will implement certain environmental controls and measures, to be developed in consultation with the U.S. Environmental Protection Agency, described as follows:

a. Sun Prairie will prepare a nutrient management and sampling plan that will include protocols for:

(i) sampling the environmental control systems at the Farms, including both the digesters and monitoring wells;

(ii) managing any nutrients removed from the environmental control systems consistent with the Pilot Study described below; and

(iii) a waste management system closure plan that specifies procedures for closure of the waste management system consistent with the terms of the Lease, to be approved by the Tribe and the BIA, in consultation with the EPA, said approval not be unreasonably withheld or delayed. The waste management system closure plan will include a bond or other appropriate financial security, if required, to meet Sun Prairie's requirements under the Lease. Nothing in this Section expands Sun Prairie's requirements under the Lease and Lease Exhibit I.

b. The nutrient management and sampling plan shall be submitted to to the BIA and the Tribe for their approval, which shall not be unreasonably withheld or delayed.

c. Sun Prairie will develop a Pilot Study to evaluate the resource utilization-value, and environmental impacts, if any, of land application of nutrient materials from the Farms' environmental control systems. The Pilot Study will be carried out subject to

the following provisions:

(i) The Parties will retain an independent expert from South Dakota State University, or other appropriate institution, to participate in the study.

(ii) The Tribe, with approval if needed from the BIA, will make up to 100 acres of land suitable for the nutrient management Pilot Study available from the Leased Sites, from other nearby lands under their control, or from other neighboring lands. The Tribe and BIA will not unreasonably withhold their consent, if applicable, to the acres selected.

(iii) If the Pilot Study demonstrates that nutrients can be applied to the land at agronomic rates, neither the Tribe nor the BIA will object to said land application, provided the land application is consistent with the findings of the Pilot Study and the Nutrient Management and Sampling Plan and is not undertaken in areas with significant potential for migration off the application site.

d. Sun Prairie will conduct an annual inspection to verify the integrity of the plastic liners and plastic covers on the digesters.

e. The Tribe, BIA and Sun Prairie will establish a program and protocol for periodic site inspections, including unannounced inspections of the Farms, to verify compliance with applicable requirements.

f. Sun Prairie will maintain records of inspections, sampling plans and analyses, the nutrient management plan and other records required under federal law relating to environmental compliance for review by the Tribe, BIA and any other agency or entity having environmental regulatory authority over the Farms.

g. Notwithstanding the controls and measures described above, Sun Prairie

remains obligated to comply with any applicable environmental laws, including permits that might be required under such applicable laws, that are administered by an environmental regulatory agency, other than the Tribe, having authority and jurisdiction over the Farms. Sun Prairie retains its rights under Lease Paragraph ¶ 21 to be free from any additional tribal licensing, permitting, and other requirements other than those disclosed in Lease Exhibit G, and the Tribe remains obligated under the same Lease Paragraph to refrain from the imposition of additional requirements other than reasonable, nondiscriminatory requirements that apply to the conduct of business within the Rosebud reservation generally and do not materially and adversely affect Sun Prairie's use of the land for the purposes set forth in the Lease.

8. *Memorandum of Understanding.* The Parties, the BIA and the EPA will use their best efforts to resolve any issues that exist regarding jurisdictional authority pertaining to environmental laws applicable to the Farms and incorporate their resolution into a Memorandum of Understanding.

9. *Release and Dismissal.* Subject to the provisions of Section 9, all pending legal proceedings in any forum shall be dismissed with prejudice. No other Federal, Tribal, or other legal or administrative actions challenging the rights of Sun Prairie or the validity or terms of the Lease will be commenced by the Parties. The Parties shall retain all their rights and remedies under the Lease as modified by and consistent with this Consent Judgment, including the provisions of the Lease at Paragraph ¶ 30 providing for dispute resolution. Sun Prairie also agrees to release all past and future claims for reimbursement by the Tribe of tax payments to Mellette County as provided for under Section 25 of the Lease.

a. Based on the findings of the Court in its Order of June 5, 2003, the letter of the Assistant Secretary dated January 27, 1999, which purported to rescind the BIA's approval of the Lease, is hereby vacated.

b. Based on the findings of the Court in its Order of June 5, 2003, and the Parties' stipulation, the validity of the Lease, subject to the modifications described herein, is hereby confirmed.

c. Nothing in this Consent Judgment and Order modifies, affects, expands or limits (i) the existing rights or responsibilities, if any, of the Department of Interior under applicable NEPA laws and regulations to review and, if necessary, supplement any existing NEPA analysis, within a reasonable time period, or (ii) the rights and objections, if any, of any other party with respect to any such NEPA action.

d. Plaintiffs hereby waive and disclaim any further actions or claims against the Tribe and the Federal Defendants, including but not limited to causes of action for damages, penalties, attorneys' fees, interest, costs, declaratory, injunctive, or other relief, arising out of the matters set forth in the Complaint.

e. The Tribe and the Federal Defendants hereby waive and disclaim any further actions or claims against the Plaintiffs, including but not limited to causes of action for damages, penalties, attorneys' fees, interest, costs, declaratory, injunctive, or other relief, arising out of the matters set forth in the Complaint and Answers, including any counterclaims that have been or could have been brought by the Tribe or the Federal Defendants.

f. If this Consent Judgment or the vacation of the BIA's letter of January 27, 1999 is found in any administrative or judicial proceeding to be invalid or unenforceable

for any reason, then nothing in this Consent Judgment shall act to waive any Parties' existing and future rights, claims, or defenses against any other Party or any other person or entity. In particular, Plaintiffs' claims in the Complaint shall be revived as if not dismissed, and Plaintiffs shall be entitled to pursue any and all claims (or additional claims) as well as demands for money damages, if applicable.

10. *Trust Responsibilities.* This Consent Judgment does not alter or diminish in any way the trust responsibilities of the United States to the Tribe regarding the land that is the subject of the Lease.

11. *Binding*. This Consent Judgment is final and binding on the Parties and their successors and assigns.

12. *Term of Judgment and Enforcement.* The Parties have the right to enforce this Consent Judgment as follows:

a. The United States District Court for the District of South Dakota will retain jurisdiction over this action for the purpose of ensuring compliance and enforcing the provisions of this Consent Judgment.

b. The Parties to this Consent Judgment must negotiate in good faith to resolve any dispute relating to the interpretation and implementation of this Consent Judgment before bringing the matter to the Court's attention.

c. The continued jurisdiction of the Court will continue throughout the term of the Lease, including any extensions, and notwithstanding any assignments.

d. The Parties and their successors and assigns, and no one else, shall have standing to seek enforcement of this Consent Judgment.

13. *No Admission.* Nothing in this Consent Judgment is intended or may be construed

as an admission of liability by any Party.

14. *Completeness.* This Consent Judgment embodies in full terms of the agreement and understanding between the parties related to the subject matter of this action or this Judgment.

15. *Signatories and Service.* Each undersigned representative of a Party to this Consent Judgment certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Judgment and to execute and legally bind such Party to this document and the Tribe waives its sovereign immunity as provided for in Section 30 of the Lease.

SO ORDERED THIS _____ DAY OF ___________, 2005.

By:

RICHARD H. BATTEY
UNITED STATES DISTRICT JUDGE

THE UNDERSIGNED PARTIES enter into this Consent Judgment in the matter of Sun Prairie et al. v. James Cason et al., No. 02-3030-RHB:

FOR THE UNITED STATES OF AMERICA
DEPARTMENT OF JUSTICE

Date: By:
Its Authorized Representative

FOR THE UNITED STATES OF AMERICA
DEPARTMENT OF THE INTERIOR

Date: By:
Its Authorized Representative

FOR THE UNITED STATES OF AMERICA
BUREAU OF INDIAN AFFAIRS

Date: By:
Its Authorized Representative

FOR SUN PRAIRIE, A PARTNERSHIP

Date: By:
Its Authorized Representative

BELL FARMS, LLP

Date: By:
Its Authorized Representative

FOR THE ROSEBUD SIOUX TRIBE

Date:

By:
Its Authorized Representative

**Exhibit A - Fair Market Value Determination Protocol**

The Tribe and Sun Prairie, or their successors and assigns, shall select a mutually acceptable appraiser who will determine the fair market value of the Farms using reasonable and customary valuation procedures as of an agreed upon date. The Tribe and Sun Prairie, or their successors and assigns, shall share the cost of preparing the appraisal. If the parties can not agree upon an appraiser, each party will select its own appraiser (at their own cost) and the two appraisers will select a third appraiser (cost to be shared by the parties). The three appraisers will then determine the fair market value of the Farms using reasonable and customary commercial valuations procedures. In the event of a dispute regarding the final appraisal, the parties shall follow the dispute resolution procedures in the Lease.

**Exhibit B – Inflation Price Index Factor**

The inflation price index factor to be applied will be the 3 year average of the Federal Government's consumer price index measuring the annual percentage increase, if any, for consumer products.