**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **ROSEBUD SIOUX TRIBE,** a federally recognized Indian Tribe**,** | ) | |
| **Plaintiff,** | ) | **No. 05-1023L** |
| **v.** | ) | **Judge James F. Merow** |
| **THE UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**TABLE OF CONTENTS**

THE UNITED STATES' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS . . . . . 1

I. INTRODUCTION . . . . . 1

II. ARGUMENT . . . . . 3

A. This Court Lacks Jurisdiction to Consider Plaintiff's Time-Barred Claims. . 3

B. Plaintiff's Response Brief Does Not Identify a Breach of a Statutory or Regulatory Provision that Can Be Fairly Interpreted to Mandate Compensation. . . . . . 7

III. CONCLUSION . . . . . 11

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Arbaugh v. Y & H Corp.*,
__ U.S. __, 126 S. Ct. 1235 (2006) . . . . . . . . . . 3

*Bolduc v. United States*,
72 Fed. Cl. 187 (2006) . . . . . . . . . . 3

*Day v. McDonough*,
__ U.S. __, 126 S. Ct. 1675 (2006) . . . . . . . . . . 3

*DuMarce v. Scarlett*,
446 F.3d 1294 (Fed. Cir. 2006) . . . . . . . . . . 8

*Menominee Tribe v. United States*,
726 F.2d 718 (Fed. Cir. 1984), *cert. denied*, 469 U.S. 826 (1984) . . . . . . . . . . 4

*Sand & Gravel Co. v. United States*,
457 F.3d 1345 (Fed. Cir. 2006) . . . . . . . . . . 1, 3

*United States v. Navajo Nation*,
537 U.S. 488 (2003) . . . . . . . . . . 7

## FEDERAL STATUTES

28 U.S.C. § 2501 . . . . . . . . . . 2

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **ROSEBUD SIOUX TRIBE, a federally recognized Indian Tribe,** | ) | |
| **Plaintiff,** | ) | **No. 05-1023L** |
| **v.** | ) | **Judge James F. Merow** |
| **THE UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**THE UNITED STATES' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

## I. INTRODUCTION

In this action, Plaintiff alleges that the United States breached its fiduciary duty to the Tribe with regard to the Land Lease authorizing the development of a large hog facility on tribal trust land. Because Plaintiff's Complaint suffers from jurisdictional deficiencies, and because it fails to identify a breach of a statutory or regulatory provision that can be fairly interpreted to mandate compensation, the United States filed Defendant's Motion for Judgment on the Pleadings ("Defendant's 12(c) Motion").

At the outset of its response brief, Plaintiff inaccurately argues that Defendant's statute of limitations attack on the timeliness of certain of Plaintiff's claims does not deprive this Court of subject-matter jurisdiction. Instead, Plaintiff contends that such an attack is actually part of Defendant's burden in arguing that such claims fail to state a claim for which relief may be granted. Plaintiff's statute of limitations argument, however, runs completely contrary to the long history of Federal Circuit cases, including a case decided as recently as last month, *Sand & Gravel Co. v. United States*, 457 F.3d 1345 (Fed. Cir. 2006), which hold that compliance with 28

U.S.C. § 2501 – the statute of limitations at issue here – is indeed a jurisdictional prerequisite for bringing suit in the Court of Federal Claims. Therefore, any claim asserted by Plaintiff relating to the original Land Lease is time-barred and, thus, fails for want of jurisdiction.

With regard to its breach of trust arguments, Plaintiff has offered nothing more in its response brief to justify its claim and the relief it seeks. Starkly missing from Plaintiff's brief is the identification of any statutory or regulatory provision that can be fairly interpreted to mandate compensation for a breach thereof. Perhaps this is because the basis of Plaintiff's breach of trust allegation appears to be a moving target; while stating that the alleged breach of trust is related to the Land Lease (*see* Complaint, Prayer for Relief, ¶ 1, p. 6), Plaintiff keeps recharacterizing the basis of the United States' alleged breach. For example, although Plaintiff claims that the alleged breach should not be considered a challenge to the Land Lease, itself, Plaintiff asserts that the United States breached its fiduciary duty to the Tribe by including a provision in the original Land Lease containing a waiver of sovereign immunity, which exposed them to the risk of litigation. *See* Complaint at ¶41. Plaintiff also claims – for the first time – that yet another way in which the United States breached its fiduciary duty to the Tribe was by approving the Land Lease without a bonding provision, creating the risk that the trust land will be returned to the Tribe in a contaminated condition. *See* Plaintiff's Response to Defendant's Motion for Judgment on the Pleadings ("Pl. Brief") at 16. Then, Plaintiff moves the target again and advances yet another characterization of its breach of trust claim – Plaintiff argues that the United States breached its fiduciary duty to the Tribe in "the manner in which" the United States first approved the original Land Lease, then declared it "void," and then agreed to consider it valid again as part of the settlement in the *Sun Prairie* litigation. *See* Complaint at ¶ 40. None

of these characterizations of the alleged breach, however, are supported by a statutory or regulatory authority that, fairly interpreted, mandates compensation. Thus, Plaintiff's Complaint fails to state a cause of action for which relief can be granted and dismissal is warranted.

## II. ARGUMENT

### A. This Court Lacks Jurisdiction to Consider Plaintiff's Time-Barred Claims.

In its response brief, Plaintiff strongly contends that it should not bear the burden of demonstrating subject-matter jurisdiction because the relevant statute of limitations in this case is not a jurisdictional prerequisite. *See* Pl. Brief at 2-3. In support of this contention, Plaintiff relies on *Bolduc v. United States*, 72 Fed. Cl. 187 (2006). *See* Pl. Brief at 2-3. While Defendant agrees that the *Bolduc* case indeed stands for this proposition, that case incorrectly states the law in the Federal Circuit. Instead, Defendant directs the Court to *Sand & Gravel Co. v. United States*, 457 F.3d 1345 (Fed. Cir. 2006), a case decided by the Federal Circuit shortly after *Bolduc*, which holds just the opposite: "The six-year statute of limitations set forth in [28 U.S.C.] section 2501 is a *jurisdictional requirement* for a suit in the Court of Federal Claims." *Id.* at 1354 (citations omitted) (emphasis added).[1/] Therefore, as a threshold matter, the statute of limitations argument contained in Defendant's 12(c) Motion is properly labeled as "jurisdictional" and, thus, Plaintiff bears the burden of establishing that its claims have subject-matter jurisdiction to be reviewed by this Court.

In its response brief, Plaintiff argues that it does not take issue with the original Land

---

[1/] In *Sand & Gravel Co.*, the Federal Circuit addressed the very same recent Supreme Court cases cited in *Bolduc* (*Day v. McDonough*, __ U.S. __, 126 S. Ct. 1675 (2006), and *Arbaugh v. Y & H Corp.*, __ U.S. __, 126 S. Ct. 1235 (2006)), and concluded that, indeed, section 2501 is jurisdictional and cannot be waived.

Lease, itself (Pl. Brief at 2 and 13) and, thus, its claim did not accrue when the United States approved the original Land Lease on September 16, 1998. While Plaintiff asserts in its response brief that it does not take issue with the original Land Lease, its Complaint alleges that the source of the alleged breach of trust is the United States' approval of the original Land Lease with a provision containing a waiver of the Tribe's sovereign immunity. *See* Complaint at ¶ 41; Pl. Brief at 9. Plaintiff then argues that its claim had not yet accrued because it was not aware of that provision's significance. Pl. Brief at 9. Certainly Plaintiff cannot reasonably argue that it did not appreciate the significance of a provision waiving the Tribe's sovereign immunity; such a waiver had the potential to expose the Tribe to any sort of litigation involving the original Land Lease. Therefore, any claim involving the inclusion of the waiver provision in the original Land Lease is time-barred.

Likewise, Plaintiff's most recent assertion of how the United States allegedly breached its trust responsibility – the failure to include a bonding provision in the original Land Lease – is time-barred. Plaintiff, in its response brief, specifically argues that the failure to include such a provision in the Land Lease leaves the Tribe vulnerable to the possibility of "receiving land contaminated by the accumulation of years and years of hog manure." Pl. Brief at 16. Plaintiff's concern with this aspect of the original Land Lease is no less capable of being known today than it was in 1998 when the original Land Lease was approved, and thus, there is no basis for the tolling of the statute of limitations. *See Menominee Tribe v. United States*, 726 F.2d 718, 721-22 (Fed. Cir. 1984), *cert. denied*, 469 U.S. 826 (1984) (statute of limitations will not be tolled unless the facts underlying the claim are either fraudulently concealed or inherently unknowable). Therefore, any claim involving the failure to include a bonding provision accrued

on September 16, 1998, when the original Land Lease was approved and, thus, is time-barred.

Finally, although Plaintiff claims that its claim did not accrue until the entry of either the Judgment by Consent and Order (docket entry #164) (hereinafter "Consent Judgment") entered on May 19, 2005, in the matter of *Sun Prairie v. Cason*, Civ. No. 02-3030 (D.S.D.), or the South Dakota district court's ruling that the original Land Lease was valid (June 5, 2003) (*see* Pl. Brief at 6 and 8), it asserts that the Assistant Secretary's decision to void the Land Lease constitutes "mismanagement of the Rosebud Sioux's resources [that] gave rise to the *Sun Prairie* litigation in South Dakota." Pl. Brief at 6. If Plaintiff is attempting to argue that this alleged mismanagement is the basis of its breach of trust claim here, then that event occurred on January 27, 1999 – more than six years before this action was filed – and, thus, is time-barred.

Plaintiff's insistence in its response brief that its claim did not accrue until the entry of the Consent Judgment is telling. While it is true that if Plaintiff could state a *viable* claim that accrued on May 19, 2005, it would not be time-barred. The reality here, however, is that there is no such claim that accrued on that date. Rather, on that date, the potential consequences of the Tribe's decision to realign itself in the *Sun Prairie* litigation with the United States and against Sun Prairie, were cut off. When the Consent Judgment was entered on May 19, 2005, the modified Land Lease contained in the Consent Judgment became operative and the Tribe was no longer under a legal obligation to allow development of hog farms on all 13 sites; by that date, two of the 13 sites had been developed, and under the original Land Lease, the Tribe would have been legally obligated to develop the remaining 11 sites. As a result, it was not until the entry of the Consent Judgment that the Tribe was assured that it was no longer vulnerable to a suit by *Sun Prairie* for the inability to develop hog farms on the remaining 11 sites. This, presumably, is

why Plaintiff alleges that it was forced into settlement for fear of exposure to "monetary damages if the Tribe did not settle the Sun Prairie litigation." Complaint, ¶ 40. The problem for Plaintiff, however, is that, by realigning itself with the United States in the *Sun Prairie* litigation and taking the position that the original Land Lease was void, *it put itself* in the position of contesting the ability of Sun Prairie to develop the remaining 11 sites. After the South Dakota district court determined on June 5, 2003, that the Land Lease was valid, however, Plaintiff had already realigned itself with the United States and, thus, was faced with either disregarding the South Dakota district court's ruling if litigation ensued, or entering into the settlement with the United States and Sun Prairie, which provided for a modified Land Lease containing terms more favorable for the Tribe. Accordingly, Plaintiff's decision to change its legal position in the *Sun Prairie* litigation to realign itself with the United States and against Sun Prairie was the basis for the Tribe's perceived threat of significant litigation exposure associated with "lost profits from the other 11 farms that had not been constructed." Pl. Brief at 15. That realignment decision, however, is entirely attributable to the Tribe, and does not give rise to a viable and timely claim that the United States breached its fiduciary duty owed the Tribe.[2/]

---

[2/] Similarly, because of the events leading up to the settlement of the *Sun Prairie* litigation, Plaintiff, in its response brief, contends that its claims should not be barred by the equitable doctrine of laches (*see* Pl. Brief at 11-13) and do not constitute an attack on the Consent Judgment (*see id.* at 14-15). Specifically, with regard to laches, Plaintiff argues that its action is timely (*see id.* at 12) and that the United States was on notice that the Tribe might bring an action for a breach of fiduciary duty because it would not agree to the inclusion of a waiver of its claims in the Consent Judgment. *See id*. at 12-13. With regard to the United States' argument that the Tribe's claims constitute an impermissible collateral attack on the Consent Judgment, Plaintiff asserts that its lawsuit does not seek to challenge either the Consent Judgment or the modified Land Lease contained therein. Rather, Plaintiff asserts that Defendant misunderstands the nature of its claims, which are based on the United States' approval of the original Land Lease, subsequent decision to declare it void, and then its "threat" to confess judgment if the Tribe did not settle the *Sun Prairie* litigation. As stated above, this does not state a viable claim

**B. Plaintiff's Response Brief Does Not Identify a Breach of a Statutory or Regulatory Provision that Can Be Fairly Interpreted to Mandate Compensation.**

Plaintiff's response brief does not provide any further basis upon which to find a viable breach of trust claim against the United States. Although Plaintiff cites to the statutory and regulatory scheme related to commercial leasing of tribal trust lands and argues that the United States' fiduciary duty is derived therefrom (*see* Pl. Brief at 4-5), Plaintiff fails to identify which statute or regulation has allegedly been breached by the United States such that it can be fairly interpreted to mandate compensation to the Tribe. In section II.B. of its response brief (*see* Pl. Brief at 4-6), Plaintiff argues that the United States assumed a fiduciary duty with regard to the original Land Lease, and in section II.F. (*see* Pl. Brief a 15-16), Plaintiff argues that it has been injured as a result of the United States' breach of its fiduciary duties. Nowhere, however, in its response brief does Plaintiff point to a specific statute or regulation that has been breached by the United States which, fairly interpreted, mandates compensation. In fact, nowhere does Plaintiff even mention any type of statute or regulation that has been breached by the United States. Moreover, Plaintiff has failed to identify any cognizable injury stemming from the alleged breach of fiduciary duty. Accordingly, Plaintiff has not stated a viable claim for a breach of a fiduciary duty and, therefore, its Complaint warrants dismissal.

---

for a breach of the United States' fiduciary duty to the Tribe. Rather, any exposure to litigation risk threatening the Tribe was a direct result of Plaintiff's own decision to realign itself with the United States in the *Sun Prairie* litigation and take the position that the original Land Lease was void. Such a change in position put the Tribe directly at odds with the legal position taken by Sun Prairie and, thus, resulted in the Tribe's perceived threat of litigation stemming from the inability to develop hog farms on the remaining 11 lots. Accordingly, the Tribe's decision to realign itself with the United States in the *Sun Prairie* litigation and its subsequent decision to agree to the settlement, was conduct that was wholly within the control of the Tribe, and, therefore, the United States did not, as Plaintiff claims, commit a breach of a fiduciary duty. *See, e.g.*, *United States v. Navajo Nation*, 537 U.S. 488 (2003).

Looking specifically at the various moving targets in Plaintiff's Complaint and response brief that purport to constitute a claim for a breach of trust, none is viable. First, Plaintiff has not pointed to any statutory or regulatory authority stating that the United States' approval of the original Land Lease containing a waiver of sovereign immunity constitutes a breach of a fiduciary duty. In fact, there simply is no statute or regulation requiring the United States, prior to approving a commercial lease involving tribal trust lands, to ensure that the lease does *not* include a provision waiving the Tribe's sovereign immunity. Perhaps this is because, contrary to Plaintiff's implicit assertion, the United States does not have a fiduciary obligation to prevent a tribe from being potentially exposed to litigation. *See DuMarce v. Scarlett*, 446 F.3d 1294, 1301 (Fed. Cir. 2006) ("To require the government trustee to act as lawyer to all Indians . . . seems beyond the reasonable scope of the government's duty as trustee, as interpreted in binding precedent, and also unreasonable and impractical."). Moreover, the settlement of the Sun Prairie litigation put an end to any perceived risk that the Tribe had with regard to potential litigation being brought by Sun Prairie for lost profits from the 11 hog farms that were not developed. Accordingly, the inclusion of the provision waiving the Tribe's sovereign immunity in the original Land Lease does not constitute a breach of the United States' fiduciary duty to Plaintiff.

Second, Plaintiff has not provided any legal authority to justify its allegation that the United States breached its fiduciary duty when the Assistant Secretary of Indian Affairs, upon determining that the Land Lease was approved without sufficient environmental review, declared the Land Lease "void." In Defendant's Rule 12(c) Motion, the United States provided a statutory basis for its authority to cancel tribal leases, however, Plaintiff completely ignored the existence of this authority in its response brief, and provided no other basis to justify its claim.

Thus, Plaintiff has failed to state a breach of trust claim in this regard as well.

Third, Plaintiff has failed to legally justify how the United States can be deemed to have breached its fiduciary duty to the Tribe in the manner in which it sought to settle the Sun Prairie litigation – especially when the settlement mirrored the presiding court's determination that the original Land Lease was valid. In short, Plaintiff cannot reasonably claim that the United States breached its trust responsibility when, during the course of settlement negotiations with a competently represented tribe, it decided to follow the South Dakota district court's determination that the original Land Lease was valid.

Fourth, as mentioned above, Plaintiff claims – for the first time – in its response brief that a breach of the United States' trust responsibility also occurred when it approved the Land Lease without a bonding provision and, thus, exposed the Tribe to "the risk of receiving land contaminated by the accumulation of years and years of hog manure." Pl. Brief at 16. Not only is Plaintiff's latest of breach of trust argument impermissible because it falls outside of the four corners of its Complaint (*see generally* Complaint), but it runs counter to Plaintiff's insistence that it is not challenging the terms of the original Land Lease, itself. *See* Pl. Brief at 1. Moreover, its concerns of contamination are clearly speculative because they would not materialize – if at all – until after the lease-term ends, which is many years from now.

In addition, it is hard to imagine how Plaintiff can go forward with its latest breach of trust argument because it completely ignores the fact that the Consent Judgment modifies the original Land Lease so that it now contains a provision directly providing for environmental controls and measures – including the requirement for a bond. *See* Consent Judgment, ¶ 7(a), at pages 9-11. Specifically, this provision includes a waste management system closure plan,

which requires that a bond be posted to ensure compliance with the terms of the Land Lease. Therefore, Plaintiff cannot assert any viable claim that a breach of fiduciary duty occurred for failure to include a bonding provision in the Land Lease. Thus, in this respect as well, Plaintiff has failed to identify a breach of a specific statute or regulation that, fairly interpreted, mandates compensation.

Finally, Plaintiff has failed to state a claim for a breach of a fiduciary duty because it cannot point to any cognizable injury resulting from the alleged breach. For example, although Plaintiff claims that it suffered damages in the form of litigation costs and expenses (*see* Complaint at ¶ 42; and Pl. Brief at 15-16), it fails to address the point raised in Defendant's Rule 12(c) Motion that, absent an express statute authorizing it, litigation costs and expenses are not recoverable damages. *See* Defendant's Rule 12(c) Motion at 27-28. Likewise, Plaintiff does not substantiate its blind assertion that its litigation costs and expenses "are indeed a direct result of the United States' breach of its trust duties." Plaintiff has simply failed to identify a breach of any statutory or regulatory provision that, fairly interpreted, mandates compensation, and, certainly, Plaintiff has failed to identify any such breach that would mandate compensation in the form of litigation costs and expenses. Thus, Plaintiff has failed to state a cause of action for a breach of a fiduciary duty and, therefore, its Complaint should be dismissed.

## III. CONCLUSION

WHEREFORE, based on the reasons set forth above and those contained in its opening brief, the United States respectfully requests that Defendant's Motion for Judgment on the Pleadings be granted, that Plaintiff's Complaint be dismissed, and that each party be directed to pay its own fees and costs.

Dated: September 29, 2006

Respectfully submitted,

s/Caroline M. Blanco

CAROLINE M. BLANCO
D.C. Bar No. 430118
Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0248
Fax: (202) 305-0267
E-mail: caroline.blanco@usdoj.gov

John Turner
Assistant Chief
U.S. Department of Justice
Environment and Natural Resources Division
Indian Resources Section
P.O. Box 44378
L'Enfant Plaza Station
Washington, DC 20026-4378
Telephone: (202) 514-9257
Fax: (202) 305-0271
E-mail: john.turner@usdoj.gov

OF COUNSEL:
Maria Wiseman
Attorney-Advisor
Branch of Trust Responsibility
Division of Indian Affairs
Office of the Solicitor, Mail Stop 6456
U.S. Department of the Interior
1849 C Street, N.W.
Washington, D.C. 20240
(202) 208-7227 Telephone
(202) 219-1791 Fax

Attorneys for the United States of America